UNITED STATES, Appellant

v.

ROBERT DANIEL TEAGUE, Private First Class,
U. S. Marine Corps, Appellee

3 USCMA 317, 12 CMR 73

318

CAPT Wesley C. Blake, USMC, for Appellant.
LT COL Kenneth E. Murphy, USMCR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by a general court-martial on June 9 and 10, 1952, on two specifications of absence without leave under Charge I, and two specifications of breaking arrest under Charge II, violations of Articles 86 and 95, Uniform Code of Military Justice, 50 USC §§ 680 and 689, respectively. He was found guilty on all specifications and sentenced to a dishonorable discharge and forfeiture of $55 a month and confinement for one year. The convening authority reduced the confinement and forfeitures to eleven months, but otherwise approved. A board of review in the office of The Judge Advocate General of the Navy was of the opinion the evidence was insufficient to support the findings of guilty on the specifications of breaking arrest, and set them aside, but affirmed the findings of guilty of absence without leave. The board reduced the forfeitures and confinement to six months, and the dishonorable discharge to a bad-conduct discharge. The Judge Advocate General of the Navy certified the record to this Court to determine two issues which will be mentioned after the facts are related.

I

The evidence of the prosecution established that on December 10, 1951, the accused was placed under arrest to await execution of a bad-conduct discharge. Under this arrest he was placed in a prisoner-at-large status and restricted to a specifically defined area of the U. S. Naval Training Center at Great Lakes, Illinois. He was required, during working hours, to perform such duties as were assigned to him by his platoon commander and to attend prisoner-at-large muster at designated times. He was forbidden to enter the enlisted men's club or to have alcoholic beverages of any kind in his possession. In addition, he was notified that any unauthorized departure from the limits of his arrest would result in disciplinary action for breaking arrest. The related information was communicated to the accused by the delivery to him of a mimeographed form, which set forth the terms of his arrest. The form also contained an acknowledgment signed by the accused which showed that he had read and understood the provisions of his arrest. Thereafter, on December 20, 1951, he absented himself from the Naval Training Center and he did not return from such unauthorized absence until January 9, 1952.

On the day of return, accused was again placed under arrest in a prisoner-at-large status with terms identical to those of his previous arrest with the exception that this time the restraint was for the purpose of having accused available when notification of action of higher authority was received. Accused by his signature again acknowledged that he had read and understood the limitations on his freedom. On January 17, 1952, he again absented himself without authorization. It was not until March 18, 1952, that he was apprehended by United States Army military police and delivered to Naval authorities at Joplin, Missouri.

In his own defense, accused introduced documentary evidence showing that on September 10, 1951, he had been convicted by a general court-mar-

tial and sentenced to three months' confinement, forfeiture of $40.00 per month for three months, and a bad-conduct discharge. He elected to testify as to the first specification of Charge II which involved the breaking of arrest on December 20, 1951, and stated that his confinement for the earlier conviction commenced on September 10, 1951; that he was released on December 10, 1951; that on the latter date he was notified there were no charges pending against him; that on the morning of his release he was taken to another building where he was informed that he had been placed in a prisoner-at-large status; and that he executed the notices of arrest dated December 10, 1951, and January 9, 1952.

At the conclusion of the evidence, defense counsel moved for a finding of not guilty on the first specification under Charge II, contending the accused was placed under arrest illegally since, in the absence of any charges pending against him, there was no probable cause for his arrest. He also moved for a finding of not guilty of both specifications under the same charge, contending that although there was a showing that accused was placed under arrest on December 10, 1951, and January 9, 1952, there was no evidence that he remained in that status until the dates of his respective absences. He concedes the record contains no evidence showing the prisoner-at-large status had terminated. The motions for findings of not guilty were overruled.

After the law officer denied the motions, defense counsel introduced into evidence a copy of the decision of the board of review, dated November 28, 1951, in which the findings of guilt were affirmed, but, because of procedural errors, the bad-conduct discharge adjudged against the accused on September 10, 1951, was held to be incorrect in law. Trial counsel introduced in rebuttal evidence showing that a copy of the board of review decision was not received by the convening authority at Great Lakes, Illinois, until after January 23, 1952. The accused thereupon renewed his motion for a finding of not guilty of one specifica-

tion but it was overruled and the court-martial returned the findings hereinbefore mentioned.

II

The board of review in the office of The Judge Advocate General of the Navy held that the law officer erred in denying the motions for findings of not guilty holding that the evidence was insufficient to support them since it failed to show that accused's status continued to be that of a prisoner-at-large up to and including the respective times of his departures on unauthorized leave. Although that holding rendered the disposition of the accused's other contention unnecessary, the board of review nevertheless passed upon the legality of the first arrest because it considered the point of sufficient importance to be discussed. It held that the arrest of the accused on December 10, 1951, was illegal.

The Judge Advocate General of the Navy asks us to answer the following questions:

"(a) Was there sufficient evidence, as a matter of law, to support the conviction on the second specification of Charge II and on Charge II?

"(b) Was the evidence sufficient, as a matter of law to have required the law officer to instruct the court on breaking restriction as a lesser included offense of the breaking arrest alleged in the first specification of Charge II?"

III

Because the first certified question involves the issue upon which the board of review reversed Charge II, we shall broaden our answer to the question as it affects both specifications. The board of review concluded that although the evidence established that on December 10, 1951, and January 9, 1952, the accused was placed in arrest, the prosecution had failed to prove that he was in that status at the times he left without authorization— i. e., December 20 and January 17, respectively, and, therefore, the proof would not support the findings. Appellate defense counsel, supporting that position, contends that there is no show-

ing whatever that the accused was in a status of arrest on the dates he left on his unauthorized absences. We disagree with this contention and base our holding upon two grounds, first, there is a presumption in favor of a continuation of the status; and, second, we find in the record evidence to support a finding that accused was under arrest at the time he departed.

Paragraph 138a, page 240, Manual for Courts-Martial, United States, 1951, provides as follows:

"A condition shown to have existed at one time may be presumed to have continued. . . ."

We recognize that the presumption would be of little value in this setting if the period were not relatively short, but here we are concerned with ten days as to the first offense and eight days as to the second. These are comparatively short periods of time in view of the purposes for which accused was placed under arrest and the nature of the restraint. The first restraint was imposed to await action by higher authorities. It is reasonable to presume that the condition would continue for such time as the reasons for its imposition remained unchanged. Moreover, had the condition not continued to exist, it would have been a relatively simple matter for the accused to have overcome the presumption. He testified on one specification and admitted he was ordered into arrest. His evidence sought to prove the arrest was illegal; but he did not testify, he did not contend then, and he does not now assert, that he had been released from his status as a prisoner. The board of review refused to accept the presumption because it asserted the status was temporary. Of course, prisoners are frequently released from arrest but that is one reason for basing the continuation of the status on a presumption as it is rebuttable and easy to overcome. Obviously, if the condition was permanent, there would be no need to indulge in a presumption. However, as previously suggested, we need not base our holding solely upon the presumption. We find in the record other evidence which shows that the accused was in arrest at the time of his departures.

The commencement of the status of arrest was proved by the admission in evidence of the two written orders signed by accused which placed him under arrest. Both of these orders contain acknowledgments of his status and an agreement to accept and abide by the regulations governing him while he remains under arrest. They sound in the future and not in the past. In addition, certified extract copies from accused's service record were placed in evidence. These stated as follows:

"7 Jan 52—MBNTC, GREAT LAKES, ILLINOIS Having been duly placed in a PAL status, did, at 2200, 20 Dec 51 absent himself without proper authority."

"22 Jan 52—MBNTC, GREAT LAKES, ILLINOIS Having been duly placed in a PAL status, did, at 2200, 17 Jan 52 absent himself without authority."

An inspection of these two extracts establishes with certainty that he was a prisoner on the day of his departure. Except for dates, the entries are substantially the same so we will discuss only the first. The date of that entry was January 7, 1952. The first phrase "having been duly placed in a PAL status" does not show the date the status was created, but it affirmatively appears to have been prior to the date of accused's absence which occurred on December 20, 1951. Another exhibit discloses that restraint was actually imposed on December 10, 1951. This leaves a ten-day interim period in which the status might be changed. Had the accused been restored to duty during that time, and had the military authorities complied with their requirements, an entry in the service record would have reflected the changed condition. Had that notation been made, the entry made on January 7, 1952, would not have been founded on the status of a prisoner-at-large but would have shown from duty to absent without authority. If we were to conclude otherwise, we would be required to find either a falsi-

fication of the record or a failure to make entries in accordance with regulations. Public officials are presumed to perform their functions as required by law and in order for us to find they failed in their duty in this instance, we would have to conjure up a change in status without any evidence in the record to justify us in so doing. We, of course, do not elect to follow that path of reasoning because we presume military officials comply reasonably with requirements and make those entries which are necessary to show conditions as they exist. In that connection, consideration must be given to the fact that this entry was not made for prosecution purposes. It was made prior to the return of the accused to military control and its purpose was to show clearly the status of the accused at the time he departed. At that time he was either on duty or in a restricted status. It would be absurd to make an entry in a service record that a man had been duly placed in arrest and had absented himself without authority if, prior to the time he went absent, he no longer occupied that status. Fairly construed, the entry shows the imposition of the restraint prior to the absence and its continuation up until the time the accused departed from the restricted area.

In addition, there are two other circumstances which support the findings of continuation of the status. The order imposing the first arrest shows that it was for the purpose of awaiting action on a previously adjudged bad-conduct discharge. This discharge could not be executed until it had been subjected to appellate review. (See Article 71(c), Uniform Code of Military Justice, 50 USC § 658.) Documentary evidence was put in the record showing that the results of the appellate review were not forwarded to the Naval Training Center at Great Lakes until January 23, 1952, long after the accused had broken his first arrest. It is unlikely that the accused's arrest, which is shown to have been imposed to await appellate action on his punitive discharge, would be terminated prior to the time action was taken.

The second arrest was imposed in order to hold accused for appropriate action by higher authority presumably on the first specification of Charge II in this case. Due to his absence, charges were not preferred until April 21, 1952, and it was not until June 3, 1952, that these charges were referred for trial to a general court-martial by the convening authority. Again, the purposes for which arrest was imposed were not fulfilled until a date subsequent to the offense. The reasonable conclusion is a person would not be released from restraint imposed to secure his presence for trial and disposition before the papers were processed by the convening authority either ordering him to trial or making other disposition.

For the foregoing reasons the first certified question is answered in the affirmative.

## IV

Solution of the second problem posed by The Judge Advocate General is to be found in a determination of whether or not the restraint imposed upon the accused by the written order of December 10 constituted a legal arrest. If it did, the instructions given by the law officer were correct and the finding of guilty on the first specification of Charge II must be affirmed. If it did not, the evidence as to the specification would support only a finding of guilty of a breach of whatever type of restraint was imposed by the order; and instructions on breach of restriction as a lesser included offense should have been given. (See Appendix 12, page 538, Manual for Courts-Martial, United States, 1951.) The authority of the commanding officer to arrest the accused must be founded on some enactment of the Code or some delegation of power by the Manual for Courts-Martial. Our determination of the legality of the arrest here under consideration must be based upon the construction of the applicable provisions of the two.

Article 9, Uniform Code of Military Justice, 50 USC § 563, provides for the imposition of restraint. The pertinent provisions of that Article are as follows:

"(a) Arrest is the restraint of a person by an order not imposed as a punishment for an offense directing him to remain within certain specified limits. Confinement is the physical restraint of a person.

"(b) An enlisted person may be ordered into arrest or confinement by any officer by an order, oral or written, delivered in person or through other persons subject to this code. . . .

. . . . . . .

"(d) No person shall be ordered into arrest or confinement except for probable cause."

The Manual defines arrest in the same language used in Article 9(a) of the Code, *supra*. (See paragraph 18a, page 21, Manual for Courts-Martial, United States, 1951.) The status of a person in arrest is described by paragraph 20a, page 23, Manual, *supra*, as follows:

"As used in this chapter, arrest is moral restraint imposed upon a person by oral or written orders of competent authority limiting the person's personal liberty pending disposition of charges. The restraint imposed is binding upon the person arrested, not by physical force, but by virtue of his moral and legal obligation to obey the order of arrest. He is subject to the restrictions incident to arrest prescribed in applicable regulations. A person in the status of arrest cannot be required to perform his full military duty, and if he is placed—by the authority who placed him in arrest or by superior authority—on duty inconsistent with such status his arrest is thereby terminated. This, however, does not prevent his being required to do ordinary cleaning or policing within the specified limits of his arrest, or to take part in routine training and duties not involving the exercise of command or the bearing of arms."

It is not contended that the imposition of the prisoner-at-large status imposed upon the accused in the present case does not fall within the definition of arrest contained in the foregoing provisions. The only contention advanced is that the reason given for the imposition of such status is not "probable cause." The board of review held that that phrase, as used in subsection (d) of Article 9, *supra*, must be construed in connection with Article 10, 50 USC § 564, which provides:

"Any person subject to this code charged with an offense under this code shall be ordered into arrest or confinement, as circumstances may require; but when charged only with an offense normally tried by a summary court-martial, such person shall not ordinarily be placed in confinement. When any person subject to this code is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

We believe that Article 10 of the Code, by its own terminology, is limited to those cases where ▓▓▓▓▓▓▓ the person sought to be restrained is charged, or will be charged, with an offense. This position is borne out by the title of Article 10, *i.e.*, "Restraint of persons *charged with offenses.*" (Emphasis supplied.) If it must be construed solely in connection with Article 9, then the board of review's interpretation might be correct, but ▓▓▓▓▓▓▓ we find nothing in that Article requiring that its provisions be restricted in such a manner. Accordingly, we believe the proper method of construing the provisions of Article 9 is to examine all other provisions of the Code and Manual having some relation thereto. When those are taken into consideration it becomes apparent that "probable cause" for the imposition of a status of arrest extends beyond the restricted meaning urged by the accused, and it is not limited to such restraint as is necessary to ensure presence of a person in order to be tried for whatever charges may be pending against him.

Article 13 of the Code, 50 USC § 567, provides:

"Subject to the provisions of article 57, no person, while being held for

trial or *the results of trial,* shall be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence, but he may be subjected to minor punishment during such period for infractions of discipline." [Emphasis supplied.]

If the italicized phrase in the above Article were interpreted in the most narrow manner, the language of the above Article might restrict the authority to restrain persons to the time sentence is imposed and thereafter any authority to restrain would be found in the sentence, or it would not exist. However, we do not accept such a restrictive construction of "results of trial" because we find in the Manual a provision which, we believe, requires an extension of the phrase to a broader meaning. Since the Manual provision is supplemental, and not contradictory, to the provisions of the Code, it must be given the force and effect of law. See United States v. Sylvester Clark, 1 USCMA 201, 2 CMR 107, decided February 29, 1952; and cf. United States v. LaGrange and Clay, 1 USCMA 342, 3 CMR 76, decided April 24, 1952.

Paragraph 21*d,* page 26, Manual for Courts-Martial, United States, 1951, defines the responsibility for restraint *after* trial. It is as follows:

"Upon notification from a trial counsel of the result of a trial (44*e* (2)), a commanding officer will take prompt and appropriate action with respect to the restraint of the person tried. Such action, depending on the circumstances, may involve the immediate release of the person from any restraint, or *the imposition of any necessary restraint pending final action on the case.*" [Emphasis supplied.]

Under this paragraph, probable cause must be considered but in a different light than before trial. Here it is merely: Is there probable cause to believe the restraint imposed is necessary? In the case at bar the sentence adjudged on the previous conviction, under which the accused had been serving three months' confinement, included a bad-conduct discharge. Hence, final action on that case could not be taken until completion of appellate review. (Article 71 (*c*), Uniform Code of Military Justice, 50 USC § 658.) Since notification of the action of the board of review on the bad-conduct discharge was not forwarded to the commanding officer until January 23, 1952, he had to take some action to assure accused's presence when time for execution, if such was necessary, was at hand. The type of restraint which he imposed was arrest in a prisoner-at-large status and a reading of the terms of the arrest shows clearly that it was not unnecessarily harsh. That there was "probable cause" to believe that some form of restraint was justified is shown by accused's action in breaking the restraint which was imposed upon him. That which was imposed did not suffice to hold him so a contention that less would have been reasonable is without merit.

We conclude that the arrest imposed upon the accused on December 10 was legal. The record contains no evidence that the restraint imposed was less than that. Therefore, there was no requirement that an instruction be given on the lesser offense of breaking restriction. The second question certified by The Judge Advocate General is answered negatively.

Both questions having been answered contrarily to the holding of the board of review, its decision is reversed and the case is returned to The Judge Advocate General of the Navy for action consistent with the views expressed herein.

Chief Judge QUINN and Judge BROSMAN concur.