UNITED STATES, Appellee

v

PETER J. HAYNES, Airman Basic,
U. S. Air Force, Appellant

15 USCMA 122, 35 CMR 94

No. 17,629

November 13, 1964

*Major Robert S. Amery* argued the cause for Appellant, Accused. With him on the brief were *Colonel Robert O. Rollman, Colonel Daniel E. Henderson, Jr.,* and *Lieutenant Colonel James W. Logan.*

*Major Neil Kasdan* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Appellant was convicted by a special court-martial, convened in Japan, of a single specification alleging breach of restriction, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. Inasmuch as there was evidence of two previous convictions by summary court-martial, he was sentenced to bad-conduct discharge, confinement at hard labor for two months, and partial forfeitures for a like period. The findings and sentence, with a minor reduction in the rate of forfeitures, were approved by the convening authority. The officer exercising general court-martial jurisdiction approved the sentence and the same was affirmed by a board of review in the office of The Judge Advocate General of the Air Force.

This Court granted review on one assignment to determine whether the restriction was lawfully imposed, and two assignments relating to procedure at the trial. However, our disposition of this case renders unnecessary further consideration of the procedural matters.

The appellant was stationed at Misawa Air Base. On two occasions, as indicated above, he was convicted by summary courts-martial of the offense of wrongful appropriation of property. On each of such occasions he was sentenced to thirty days confinement at hard labor, the confinement being served at Tachikawa Air Base, Japan.

It was upon his return to Misawa Air Base, upon completion of the second period of confinement, that appellant was "restricted to the limits of Misawa Air Base" by his squadron commander. The legality of this "restriction" is the subject matter with which we are concerned.

The squadron commander testified that since the accused's previous difficulty, for which he had twice been sentenced, involved the subsequent sale of the wrongfully appropriated property in Misawa City, he felt the accused "would continue to do the same thing if the opportunity presented itself." He therefore, in the presence of the accused's first sergeant, informed the accused "that he was restricted to the limits of Misawa Air Base." He did not place any time limit on the "restriction" but told the accused that "if he had business to transact in Misawa [City], to see me or the First Sergeant and we would restore his pass to him to transact this business that he had to transact." On the 9th of October, accused received a pass, proceeded to Misawa City and returned the pass on the completion of his business. This is the only occasion, according to the witness, when the accused's pass was restored to him.

On cross-examination, when the squadron commander was asked the reason for his putting the accused on restriction, he replied, "I felt it was in the best interest of the Air Force." He

**123**

stated further that while the accused, at the time of the order placing him on "restriction," was not under charges and no investigation was pending against him, administrative action, against the accused, under the provisions of Air Force Regulation 39–17, "Discharge of Airmen Because of Unfitness," was being considered. The record also reflects that at the pertinent time the accused was not a suspect or a material witness in a judicial proceeding. In short, the only reason for the restriction, as stated by the squadron commander, was in order to prevent the accused from again wrongfully appropriating property and taking it to Misawa City to sell as he had done previously.

The basis for the charge of breach of restriction was the accused's presence in a movie theatre two blocks from Misawa Air Base where he was observed by his first sergeant.

Appellate defense counsel contends that, inasmuch as at the time the restriction was imposed the accused was not under charges or under investigation and was not a suspect or material witness in a judicial proceeding, the restriction was not lawfully imposed.

The Government counters by asserting that the order of the commander imposing the restriction in question was not in conflict with any provisions of law governing the giving of orders in general or the imposition of restrictions in particular; that such order, having no connection with disciplinary proceedings and not having been imposed as a punitive measure, was entirely legal and valid as a proper exercise of the inherent authority of command.

Restriction is a restraint on the liberty of an individual. It is a lesser restraint than arrest, but a restraint nonetheless. Breach of restriction is a lesser included offense of a charge of breach of arrest. Manual for Courts-Martial, United States, 1951, Appendix 12, page 538; United States v Pritchard, 46 BR 141; United States v Biot, 52 BR 135; United States v Vaughan, 2 CMR (AF) 258. Restriction to quarters or to barracks is in fact arrest[1] " 'and the designation of the restraint as restriction would have no effect.' " United States v Biot, United States v Vaughan, both supra. In *Vaughan,* the board of review, in considering the issue at hand, found that:

"Authority for administrative restriction is newly promulgated in the Manual for Courts-Martial, 1949, in paragraph 19*b*. . . .

"[I]nquiry into the history of the provision of the 1949 Manual indicates that it is derived from letter opinions by The Judge Advocate General of the Army [citing *Biot,* supra]."

This provision was restated in the current Manual, paragraph 20*b*, with minor but unimportant changes.

As to arrest, this Court in United States v Teague, 3 USCMA 317, 322, 12 CMR 73, said:

". . . The authority of the commanding officer to arrest the accused must be founded on some enactment of the Code or some delegation of power by the Manual for Courts-Martial. Our determination of the legality of the arrest here under consideration must be based upon the construction of the applicable provisions of the two."

It is clear then that our determination of the legality of the restriction here under consideration must be based upon applicable provisions of the Code and the Manual.

Except for the restrictions provided in the newly amended provision of Article 15, Uniform Code of Military Justice, 10 USC § 815, "Commanding officer's non-judicial punishment," no provision of the Uniform Code of Military Justice specifically provides for restriction, either punitive or administrative. The Manual for Courts-Martial, United States, 1951, contains numerous provisions for the imposition of restriction. As illustrative thereof, we point out that restriction may be imposed by gen-

[1] See Article 9 (a), Uniform Code of Military Justice, 10 USC § 809.

124

eral courts-martial, paragraph 14; by special courts-martial, paragraph 15; and by summary courts-martial, paragraph 16. Paragraph 174b provides that:

". . . A violation of a restraint on liberty other than arrest, custody or confinement, as an administrative restriction imposed in the interests of *training, discipline,* or *medical quarantine,* or the restraint imposed in lieu of arrest (20b) on a *prisoner paroled to work within certain limits,* should be charged under Article 134." [Emphasis supplied.]

And in paragraph 20b we find the following:

"An officer authorized to arrest (21a) may, within his discretion and without imposing arrest, restrict *an accused* person of his command, or subject to his authority, to specified areas of a military command. . . . Thus *an accused* person may be required to remain within a specified area at specified times either *because his continued presence pending investigation* may be necessary or because it may be considered a wise precaution to restrict him to such an area in order that he may not again be exposed to the temptation of misconduct similar to that *for which he is already under charges."* [Emphasis supplied.]

Likewise, as provided in paragraph 21d, a convicted person may be restrained pending final action on the case. Cf. United States v Petroff-Tachomakoff, 5 USCMA 824, 19 CMR 120.

We find no provision of the Code or the Manual which could be construed as authorizing the imposition of restriction for the ▮▮▮▮▮ ▮ *only* purpose contended here. Appellant was not then under charges, under investigation, under suspicion, nor a material witness. Neither was the restriction imposed, as conceded by the Government, in the interest of training, discipline, or medical quarantine. There was an intent here to deter the accused from possibly committing further offenses, but this ac-

cused was not "already under charges." In short, there was no authorized ground therefor and the "restriction" was not lawfully imposed.

While we have alluded above to the fact that administrative restriction was "newly promulgated" in the 1949 Manual, the circumstances depicted therein under which such restriction may be imposed were not new, having been previously set forth in letter opinions by The Judge Advocate General of the Army. So, too, the concept we set forth in this opinion, that restriction may not be imposed in circumstances such as are present in this case, is not new or novel. It is a well-settled rule of military law that adjudged ▮▮▮▮▮ ▮ punishments may not be increased by the additional imposition of restriction. This was clearly stated in an opinion of The Judge Advocate General of the Army as early as 1914, in a somewhat similar situation:

"By a conduct-grade classification in force at Fort Grant, Canal Zone, the enlisted men were divided into three classes, A, B, and C. Class A men were furnished permanent passes and allowed to be absent from the post, except when detailed for duty, from report until reveille; class B men were permitted to leave the post when not on duty by obtaining each time a regularly signed pass; and class C men, which included all who were undergoing company punishment or who had been recently tried, were restricted to the limits of the post. A private soldier was tried by court-martial and sentenced only to forfeiture of $10 of his pay per month for three months. In the operation of said regulations he was to be confined to the limits of the post until the termination of the forfeiture.

"*Held,* That the restriction of the soldier to the post as the result of his conviction by court-martial when his sentence involved forfeiture of pay only, was not authorized, as such restriction thereby increased the duly adjudged punishment in violation of a well-settled rule of military law;

**125**

and that so much of the method of classifying men according to conduct at said fort as resulted in confining them to the post as a consequence of conviction by court-martial, in addition to a prescribed sentence, was contrary to military law and should be discontinued. *30–750, Sept. 14, 1914.*" [Digest of Opinions of The Judge Advocate General of the Army, 1912–1930, § 1434.]

Government appellate counsel argue strongly and with commendable vigor the importance of obedience to orders of members of the military establishment. We find no fault with those arguments. The short answer, however, is that the Government has not seen fit to charge appellant with failure to obey an order under Article 92. Therefore we are not called upon to determine whether this record would support a conviction thereof.

Appellate Government counsel also argue that a military member is not generally free to come and go as he chooses. Neither do we find any complaint with such argument. We are not here specifically concerned with a commander's control over leave or passes. Again we point out that the Government has not seen fit to charge appellant with absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and we are not called upon to decide whether this record would support a conviction thereof.

The disposition we have made of the first assignment of error renders it unnecessary to consider the two granted issues as to procedural matters at the trial.

The decision of the board of review is reversed and the charge is dismissed.

Chief Judge QUINN and Judge FERGUSON concur.