UNITED STATES, Appellee

v

BERNARD SMITH, Private, U. S. Army, Appellant

21 USCMA 231, 45 CMR 5

No. 24,283

March 10, 1972

*Bernard J. Casey, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Colonel George J. McCartin, Jr.*

*Captain Robert C. Roth, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain Walter A. Smith, III.*

DUNCAN, Judge:

On April 20, 1970, at approximately 5:00 p.m., the appellant became involved in a dispute with another soldier. After both had loudly argued, Private Smith was restrained from approaching his adversary. At about 5:30 p.m., Sergeant First Class Summers ordered the appellant, "that he [Smith] would be staying in the orderly room the remainder of that day and the night." Sergeant Summers further admonished that "[t]he CQ [charge-of-quarters] was the only one who would give him permission to leave outside of myself," and that "[h]e would be allowed to go to chow and to use the latrine facilities."

Sometime after arriving at the orderly room, Private Smith informed the charge-of-quarters that he had lost his wallet; the charge-of-quarters permitted him to go search for it. Unsuccessful, the appellant returned and advised the charge-of-quarters that he was departing again to attempt to find his wallet. The charge-of-quarters told Smith:

". . . [I]t would be best if he waited until morning and talked to the First Sergeant about looking for his wallet. He said he was going to leave anyway. I asked him if he knew what he was doing being he was restricted. Then I told him he was on his own."

Later that night Sergeant Summers returned to the orderly room and discovered the appellant absent. The sergeant found Smith in one of the troop billets about fifty meters away from the orderly room.

The appellant maintains that he was in the billet attempting to find his wallet which was necessary for the reason that the wallet contained the key to his locker, and without the key he could not procure items necessary for showering.

Specialist Five Robinson, the charge-of-quarters, also testified that Smith

had been on restriction approximately twenty-four nights. The appellant stated that the commanding officer had ordered him to stay in the orderly room at night after 7:00 p.m.

By special court-martial, the appellant was found guilty of two specifications of disrespect to a commissioned officer, assault and battery, disorderly in command, and failure to obey "a lawful order issued by Sergeant First Class Bobby D. Summers, to stay in the orderly room," in violation of Articles 89, 128, 134, and 92, Uniform Code of Military Justice, 10 USC §§ 889, 928, 934, and 892, respectively. He was sentenced to a bad-conduct discharge, forfeiture of $82.00 pay per month for six months, and confinement at hard labor for six months. The convening authority disapproved the findings of guilty to the offense of disorderly in command, and approved the remaining findings and sentence as adjudged. On February 24, 1971, the Court of Military Review affirmed the findings and sentence. On June 11, 1971, appellant petitioned this Court for a grant of review pursuant to the provisions of Article 67(b)(3), Code, supra, 10 USC § 867. On July 26, 1971, we granted appellant's petition on the following issue:

Whether the evidence is legally insufficient to prove appellant's guilt of Additional Charge IV and its specification (failure to obey order to stay in orderly room).

The Government submits that the first sergeant of a company has, by reason of his position through a necessary general delegation of authority of his commander, the authority as well as the responsibility to take actions necessary to protect the welfare of the men under his charge, and to maintain order and discipline. In keeping with that concept, it is argued that the facts of the instant case accommodate the conclusion that Sergeant Summers used the word restrict in its common ordinary meaning rather than as a restriction as specifically

provided for in the Manual for Courts-Martial, United States, 1969 (Revised edition), and that his order was only an order of segregation to avoid further trouble.

We generally subscribe to Government's contention as to the scope and extent of a first sergeant's authority, and our intent is not to erode that authority. Keenly, we appreciate the probability of innumerable exigencies that arise which call for the exercise of the general authority of a first sergeant to issue orders. However, it is appropriate to point out ■■■■■■■ ■ that the imposition of an actual restriction on personal liberty is far-reaching and a power which must be utilized with great concern. This Court has decided that an exercise of the power to restrict must be pursuant to the Manual. See United States v Haynes, 15 USCMA 122, 35 CMR 94 (1964).

In *Haynes* the legality of the restriction, which that accused allegedly breached, was in question. Haynes was stationed at Misawa Air Base. On two previous occasions he had been convicted by summary court-martial of the offense of wrongful appropriation of property. On each occasion he was sentenced to thirty days confinement at hard labor, the confinement being served at Tachikawa Air Base, Japan. It was upon his return to Misawa Air Base, after completion of the second period of confinement, that he was " 'restricted to the limits of Misawa Air Base' " by his squadron commander. The latter testified that since Haynes' previous difficulties, for which he had twice been sentenced, involved the sale in Misawa City of the wrongfully appropriated property, he felt that Haynes " 'would continue to do the same thing if the opportunity presented itself.' " On cross-examination he asserted that he believed his action to be " 'in the best interest of the Air Force.' " In the process of rejecting the Government's contention that the order of restriction was "legal and valid as a proper exercise of the inherent authority of command," this Court declared:

"Restriction is a restraint on the liberty of an individual. It is a lesser restraint than arrest, but a restraint nonetheless. Breach of restriction is a lesser included offense of a charge of breach of arrest. Manual for Courts-Martial, United States, 1951, Appendix 12, page 538; United States v Pritchard, 46 BR 141; United States v Biot, 52 BR 135; United States v Vaughan, 2 CMR (AF) 258. Restriction to quarters or to barracks is in fact arrest[1] ' "and the designation of the restraint as restriction would have no effect." ' United States v Biot, United States v Vaughan, both supra. . . .

•  •  •  •  •

"As to arrest, this Court in United States v Teague, 3 USCMA 317, 322, 12 CMR 73 [1953], said:

'. . . The authority of the commanding officer to arrest the accused must be founded on some enactment of the Code or some delegation of power by the Manual for Courts-Martial. Our determination of the legality of the arrest here under consideration must be based upon the construction of the applicable provisions of the two.'

"It is clear then that our determination of the legality of the restriction here under consideration must be based upon applicable provisions of the Code and the Manual.

"Except for the restrictions provided in the newly amended provision of Article 15, Uniform Code of Military Justice, 10 USC § 815, 'Commanding officer's non-judicial punishment,' no provision of the Uniform Code of Military Justice specifically provides for restriction, either punitive or administrative. . . .

---

"[1] See Article 9 (a). Uniform Code of Military Justice, 10 USC § 809."

In addition, restriction may be imposed by general courts-martial, para-

graph 14; by special courts-martial, paragraph 15; and by summary courts-martial, paragraph 16. The restriction mentioned in those paragraphs of the Manual obviously are not pertinent to the matter before us.

Paragraph 20, captioned "RESTRAINT," provides in part:

"a. Status of a person in arrest. As used in this chapter, arrest is moral restraint imposed upon a person by oral or written orders of *competent authority* limiting the person's personal liberty pending disposition of charges. . . .

"b. Restriction in lieu of arrest. *An officer* authorized to arrest (21a) may, within his discretion and without imposing arrest, *restrict an accused* person of his command, or subject to his authority, to specified areas of a military command. . . . Violations of these restrictions are punishable as violations of Article 134, as are breaches of punitive restrictions." [Emphasis partially supplied.]

Paragraph 21a, "Who may arrest or confine," differentiates between the arrest of a commissioned officer, warrant officer, or civilian and the arrest of an enlisted member. With regard to the latter, the following is noted:

"(2) *Enlisted member.* Any commissioned officer may order an enlisted member into arrest or confinement. . . . *A commanding officer may authorize* warrant officers, petty officers, or *noncommissioned officers* to order enlisted members of his command or subject to his authority into arrest or confinement (Art. 9 (b))." [Emphasis partially supplied.]

Finally, paragraph 174b states in part:

". . . A violation of a restraint on liberty other than arrest, custody, or confinement, as an *administrative restriction* imposed in the interests of training, discipline, or medical quarantine or the restraint imposed in lieu of arrest (20b) on a prisoner paroled to work within certain limits, should be charged under Article 134." [Emphasis supplied.]

We have been unable to find any reference in the Manual granting to a noncommissioned officer the plenary power to place a subordinate in a status of *restriction.* Although paragraph 21a(2), Manual, supra, provides for the delegation of authority from the commanding officer to a noncommissioned officer to arrest an enlisted member, this record is devoid of any evidence that authority to arrest or restrict was delegated to Sergeant Summers. In addition, we note that the restriction order from Sergeant Summers is obviously different from that of the commanding officer.

Moreover, there is no evidence regarding the presence of or absence from the unit of the commanding officer or any officer at the time Sergeant Summers issued the disputed order.

Consequently, the Government's argument urging a theory that Sergeant Summers had acted as an agent of the commanding officer in restricting the appellant, cannot reasonably be drawn from the facts. Likewise, the facts do not illustrate that Sergeant Summers was impressed into the status of command responsibility in the absence of the commanding officer. Compare, United States v Davis, 4 USCMA 577, 16 CMR 151 (1954).

The critical question in the instant case, therefore, is whether Sergeant Summers' order was lawful in that it segregated the appellant from a troublesome confrontation with another member of the unit, or was the order unlawful in that it imposed a restriction which a noncommissioned officer has no authority to order. An order is presumed to be lawful. In this case the lawfulness of the order was not contested at trial. The appellant had the burden of showing that the order was illegal. We believe the evidence is such that we are obliged to hold that the order is not unlawful as a matter of law.

234

The appellant had previously been restricted by his commanding officer for the reason that he had been charged with seven different violations of the Uniform Code of Military Justice. Sergeant Summers' order closely in time followed the controversy with another soldier.

The appellant strongly urges that Sergeant Summers' testimony is such that it leaves no doubt ▉▉▉▉ ▉ that the questioned order was intended to be an order of restriction. Sergeant Summers stated on direct examination:

"Q. What authority did you have to give an order of that kind?

"A. I can put individuals on restriction to a certain place or a specific area as I am the First Sergeant of the unit."

We believe Sergeant Summers' legal conclusion to be erroneous, and we are not bound by it. Stated another way, Sergeant Summers' incorrect view of the law does not *a fortiori* render the order an unlawful attempt to restrict. The effect of his order on the appellant was not improper.

We readily agree that the first sergeant could not have restricted Private Smith for an indefinite period. However, the evidence sufficiently shows that he reasonably could have given the order to prevent Private Smith's resumption of a controversy with another soldier. The overnight limit on the order tends to suggest that it was an interim, preventive step.

As mentioned hereinabove, this Court held in *Haynes*, supra, that an airman twice convicted of wrongful appropriation of property could not, after the serving of sentence for these two offenses, be later restricted to the limits of his base by a squadron commander whose purpose was declared as being the prevention of another offense of the same type. But the restriction in *Haynes* was unlimited in its duration. In contrast from the evidence adduced in the instant case, it could be reasonably inferred that the order with which we are concerned was related to the immediate maintenance of order within the unit, and it was for slightly longer than one night.

Whether or not Smith's presence in the troop billet where he was found by Sergeant Summers amounted to disobedience of Summers' order was a question of fact for determination by the triers of fact.

Accordingly, we affirm the decision of the Court of Military Review.

Chief Judge DARDEN concurs.

QUINN, Judge (concurring in the result):

The number and nature of the offenses not placed in issue by this appeal are such that I perceive no fair risk of harm to the appellant, in either reputation or punishment, resulting from the findings of guilty of Additional Charge IV and its specification, which the Staff Judge Advocate indicated to the convening authority "should be treated as breach of restriction," an offense carrying a maximum penalty of confinement and partial forfeitures for one month. United States v Subia, 12 USCMA 23, 30 CMR 23 (1960). Consequently, I believe it is unnecessary to resolve the question presented to us, and I would affirm the decision of the Court of Military Review. United States v Subia, supra; United States v Helfrick, 9 USCMA 221, 25 CMR 483 (1958).