UNITED STATES, Appellee,

v.

Carl L. ROBINSON, Airman Basic, U. S. Air Force, Appellant.

No. 31,707.
ACM 21870.

U. S. Court of Military Appeals.

April 25, 1977.

*Captain Gary C. Smallridge* argued the cause for Appellant, Accused. With him on the briefs were *Colonel Robert W. Norris, Colonel Jerry E. Conner, Major John A. Cutts, III,* and *Major Bruce R. Houston.*

*Colonel Julius C. Ullerich* argued the cause for Appellee, United States. With him on the brief was *Captain Rex L. Fuller, III.*

Opinion of the Court

COOK, Judge:

The appellant was convicted by a general court-martial of numerous offenses, including four specifications alleging a failure to

obey a lawful order—Retraining Group Regulation 125–2 (Aug. 19, 1974).[1] The Court of Military Review disapproved the findings of guilty to two of these specifications. We granted review to determine whether the regulation, hereinafter referred to as RG Reg. 125–2,[2] was lawfully applied to the appellant.

As a result of a previous court-martial conviction which included a sentence to confinement, the appellant was transferred to the confinement facility of the 3320th Retraining Group at Lowry Air Force Base, Colorado. On August 28, 1974, he was transferred from the confinement facility to the 3320th Retraining Squadron. Air Force Manual 125–2 (Nov. 8, 1971), sets forth the following as to the purpose of the 3320th Retraining Group:

8–1. Mission. The mission of the 3320th Retraining Group is threefold:

a. Restoration or Return. The Retraining Group provides Air Force prisoners convicted by special or general courts-martial with specialized treatment and training to prepare them for return to Air Force duty improved in attitude, conduct, efficiency, and skill.

Paragraph 8–5 of AFM 125–2 required the Retraining Group commander to "establish a system for controlling retrainee movements at all times."[3] Pursuant to the requirement, the commander promulgated RG Reg. 125–2. Paragraph 3a of this regulation provided:

Based upon the military duty assignment to retraining, each retrainee is hereby restricted administratively to the area of his assigned team. When specifically authorized to do so by a member of the Retraining Group staff, a retrainee may depart this area for military duty, sick call, worship, meals, etc. He may depart this area during scheduled time off to take advantage of awarded privileges without specific approval of each absence.

Paragraph 5 and attachment 3 to the regulation, attached as an appendix to this opinion, set forth five "Retrainee Privilege Levels." These levels specified limitations on the movements of the retrainees, with level I being the most restrictive and level V the least. Various areas on base were listed as either authorized or unauthorized, depending on the privilege level the retrainee had attained. A retrainee in level V was allowed to leave the base; the right was also extended to a retrainee in level IV, to a lesser extent. A retrainee would be advanced from a lower to a higher privilege level or regressed from a higher to a lower level for a variety of reasons.

■■■ At the time of the events in issue, appellant was in level I. Charge III, specification 2, alleged that he violated RG Reg. 125–2 on January 7, 1975, by being off base, and specification 3 of Charge III alleged he violated the regulation on January 9 by failing to sign out of his team area as required by paragraph 3a(1). In special findings, the military judge noted that the appellant had completed service of his previous court-martial sentence on September 3, 1974. On the basis of this finding, the appellant submits, as he did at trial, that the restrictive provisions of RG Reg. 125–2 constituted an unlawful extension of his court-martial sentence with the result that, as applied to him in January 1975, the regulation was illegal. Contrarily, the Government argues the appellant was merely subjected to a retraining program and any restriction pursuant thereto was administrative, not punitive.

In *United States v. Haynes*, 15 U.S.C. M.A. 122, 125, 35 C.M.R. 94, 97 (1964), the Court observed:

---

1. The military judge ruled that for sentencing purposes the four offenses would be considered as breaches of restriction. *See* Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 127c, Table of Maximum Punishments, n. 5.

2. The regulation has been replaced by one effective March 1, 1976.

3. Subsequent to the events in issue, the Air Force Manual was superseded by Air Force Regulation 125–18 (Jan. 16, 1975).

It is a well-settled rule of military law that adjudged punishments may not be increased by the additional imposition of restriction.

An order implementing an illegal restriction is invalid. *United States v. Gentle*, 16 U.S.C.M.A. 437, 37 C.M.R. 57 (1966); *see generally United States v. Smith*, 21 U.S.C. M.A. 231, 45 C.M.R. 5 (1972). However, restriction imposed in the interest of training is a legitimate exercise of a command function. *See United States v. Haynes, supra*; paragraph 174*b*, Manual for Courts-Martial, United States, 1969 (Rev.). Thus, scrutiny of the circumstances is essential to a determination of the nature of appellant's restriction.

█ As previously noted, the Retraining Group is charged with the responsibility of "specialized treatment and training" of prisoners, and appellant's transfer to that unit was in execution of a court-martial sentence. The evidence reflects that "retrainees" whose terms of confinement had expired were commingled with prisoners whose terms of confinement had not terminated. While some additional requirements were imposed on prisoners in confinement status,[4] both classes of retrainees were subjected to the various types of restriction and limitations set forth in RG Reg. 125–2 and attachment 3 thereto. Accordingly, although the AFM 125–2 and RG Reg. 125–2 were concerned with "retraining," that program was an integral part of the penal institution's regimen.

█ One additional matter warrants discussion. The defense and Government disagree as to whether appellant voluntarily entered the 3320th Retraining Group and thereby consented to participate in the retraining program for as long as the authorities deemed it necessary for his rehabilitation. The record reflects that the appellant testified he did not consent to his transfer to the retraining group although he desired a more favorable discharge. This evidence stands unrebutted by the Government. Thus, the record fails to support the Government's argument that, by expressing a desire for a more favorable discharge, the appellant implicitly consented to enter the retraining program.[5] The waiver of the appellant's right to be released from the institution in question after serving his term of confinement cannot be assumed, but must be proved by the Government. *See generally United States v. Mayton*, 23 U.S.C.M.A. 565, 50 C.M.R. 784, 1 M.J. 171 (1975).

█ We, therefore, conclude that retention of appellant within the 3320th Retraining Group beyond the adjudged term of his confinement was an unlawful extension of the sentence adjudged by his court-martial. *See McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 93 S.Ct. 2083, 32 L.Ed.2d 719 (1972).

The decision of the United States Air Force Court of Military Review is reversed as to the findings of specifications 2 and 3 of Charge III and the sentence. Charge III and the specifications thereunder are dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to the Air Force Court of Military Review for reassessment of the sentence on the basis of the remaining findings of guilty.

PERRY, J., concurs.

FLETCHER, Chief Judge (dissenting):

In my view, the restrictive provisions of RG Reg. 125–2 represent an exercise of a command function in the interest of training. Even though restraint under privilege level I was substantial, the appellant not only had, but exercised, the option of meritoriously earning, then losing, the relative freedom of privilege level V. But even under level I there were other differences

---

4. Some additional requirements are set forth in Retraining Group Reg. 125–2, attachment 4, but these requirements are concerned with off-base passes, alcoholic beverages, and a requirement that prisoners be present for a "head count."

5. We note that AFR 125–18 now provides that a prisoner must volunteer for retraining before he can be transferred to the Retraining Squadron of the 3320th Retraining Group.

between the status of a "retrainee" and that of a prisoner serving a sentence pursuant to a court-martial conviction. This militates against the view of these restrictions as subterfuge for mere confinement.

I disagree with the suggestion that the record does not support implicit consent on the part of the appellant to enter the retraining program. The record reflects the option of prisoners to refuse participation in the retraining program. Appellant testified that while he did not particularly want to go to the retraining group, he did not decline entry because he knew a discharge was in the offing and he perceived successful participation in the program as a way to upgrade his discharge. Appellant's testimony to this motivation under these facts evidences at least implicit consent to this military program. I, thus, conclude that retention of the appellant within the 3320th Retraining Group beyond the term of his prior court-martial confinement was not an illegal extension of his sentence and that the restrictive regulation was lawfully applied to him.

## APPENDIX

### RG Reg. 125–2 (Aug. 19, 1974).

5. Privilege Levels: Five privilege levels are outlined in Attachment 3. Retrainees will advance from one privilege level to the next on the basis of point totals and team approval. Retrainees who are not advanced, even though they have the point total required for the next higher privilege level, will be counseled by the Team Leader/NCOIC. A written record of the counseling will be made on ATC Form 18, which will be retained in the team folder. Once advanced, a retrainee must continue to earn points prescribed in Attachment 1 on a daily basis, or he will be regressed to the next lower privilege level.

\* \* \* \* \* \* \* \* \* \* \* \*

### ATTACHMENT 3

#### Retrainee Privilege Levels

Level I: A retrainee in Level I may depart his team area of residence to go directly to and return directly from a single designated location on Lowry Air Force Base, Colorado, if authorized to do so in advance by a member of the Retraining Group staff.

Level II: During scheduled free time, a retrainee in Level II may sign out for one area listed in the table below at a time. He must proceed directly to and return directly from the area for which he is signed out. He must sign in immediately upon his return. He must request and receive permission from a member of the Retraining Group staff to sign out for any other location; the same sign out/in and travel rules apply to retrainees in Level II as do to retrainees in Level I.

Level III: During scheduled free time, a retrainee in Level III may sign out for one area listed in the table below at a time. He must request and receive permission from a member of the Retraining Group staff to sign out for any other location. The same sign out/in and travel rules apply to retrainees in Level III as do to retrainees in Level I.

Level IV: During scheduled free time, a retrainee in Level IV may sign out for up to two of the areas listed in the table below. NOTE: Retrainees whose minimum release dates have not yet passed must observe the conditions of their parole as outlined in Atch 4. The retrainees in Level IV must sign out and in at their Team upon departure/return.

Level V: Retrainees in Level V may sign out for up to two of the areas listed in the table below. Level V retrainees are not required to meet bedcheck or week end morning roll calls, and may be absent from their Team areas after bedcheck/before roll call. NOTE: Retrainees whose minimum release dates have not yet passed must observe the conditions of their parole as outlined in Atch 4. The retrainees in Level V must sign out and in at their Team upon departure/return.

| AREA OR PRIVILEGE | | AUTHORIZED FOR PRIVILEGE LEVEL | | | | |
|---|---|---|---|---|---|---|
| | | I | II | III | IV | V |
| Group Workshop/Chapel | Bldg 777 | YES | YES | YES | YES | YES |
| Group Gymnasium | Bldg 779 | YES | YES | YES | YES | YES |
| Group Athletic Events | | YES | YES | YES | YES | YES |
| Base Exchange (Troop) | Bldg 864 | NO* | YES | YES | YES | YES |
| Base Exchange (Main) | Bldg 667 | NO | NO | YES | YES | YES |
| Library | Bldg 625 | NO | YES | YES | YES | YES |
| Base Theater ( # 1) | Bldg 353 | NO | NO | NO | YES | YES |
| Base Theater ( # 2) | Bldg 693 | NO | NO | YES | YES | YES |
| Swimming Pool, Indoor | Bldg 589 | NO | NO * | YES | YES | YES |
| Swimming Pool, Outdoor | Bldg 695 | NO | NO * | YES | YES | YES |
| Contrail Recreation Center | Bldg 483 | NO | NO | NO * | YES | YES |
| Bowling Alley | Bldg 867 | NO | NO | NO | YES | YES |
| Airmans Club | Bldg 865 | NO | NO | NO | NO * | NO * |
| Base Area | | NO | NO | NO | YES | YES |
| Off Base | | NO | NO | NO | NO * | YES |

* Unless given specific authorization in advance IAW basic regulation.