UNITED STATES

v.

Michael R. BUCHECKER, 182 48 9399, Private (E–1), U. S. Marine Corps.

NMCM 81 2301.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 5 March 1981.

Decided 23 April 1982.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

LT Jerome A. Busch, JAGC, USNR, Appellate Defense Counsel.

LCDR W. A. Dorsey, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and MALONE, JJ.

GLADIS, Senior Judge:

The accused was convicted at a general court-martial bench trial of a 5-day unauthorized absence, larceny of an M–16 rifle and larceny of a motor vehicle, in violation of Articles 86 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886 and 921. He was sentenced to a bad-conduct discharge, confinement at hard labor for 18 months, and total forfeitures. The convening authority reduced the confinement to 12 months, and otherwise approved the sentence.

The accused contends that the charges should be dismissed because he was denied a speedy trial since the conditions of his pretrial restraint in the Recruit Casual Section to which he was assigned while awaiting trial were tantamount to pretrial confinement and exceeded 90 days. *See United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971) (a presumption exists that an accused has been denied a speedy trial when pretrial confinement exceeds 3 months). *Compare United States v. Schilf*, 1 M.J. 251 (C.M.A.1976) (severe restriction is tantamount to confinement for purposes of triggering the Burton presumption) *with United States v. Powell*, 2 M.J. 6 (C.M.A. 1976) (withdrawal of pass privileges pending investigation of charges was restriction for speedy trial purposes, where other members of the accused's unit were automatically accorded such privileges though undeserving, but not such onerous restriction as to be equivalent to confinement.) We reject his contention because the restrictions to which the accused, a recruit, was subjected were generally no more onerous than those imposed on all the other recruits in the training cycle who were assigned to the training regiment of which the Recruit Casual Section was a part.

The accused committed the offenses of which he was convicted while he was a recruit assigned to a recruit training battalion in the recruit training regiment at the Marine Corps Recruit Depot, Parris Island. He subsequently terminated his brief unauthorized absence by surrender to a recruiter in Pennsylvania, was returned to Parris Island, and placed in pretrial confinement. When a magistrate ordered the accused's release from confinement, he was assigned to Recruit Casual Section, a temporary holding facility for recruits unable to continue in the regular training cycle. The Casual Section was part of the recruit training regiment headquarters. Those assigned to it remained members of their recruit training battalion. The vast majority did not return to the regular training cycle, but were discharged. Recruits assigned to Casual Section included homosexuals, recruits suspected of fraudulent enlistment, recruits with behavioral, medical, or disciplinary problems who could not continue in the regular training cycle, and others awaiting discharge. Although these recruits did not participate in the regular recruit training cycle while in Casual Section, they were generally subjected to the same restrictions as the recruits in the regular cycle. Some of these restrictions were more severe than those imposed on individuals confined in the Depot brig.

The accused admits that had he continued in the regular training cycle while awaiting trial, the restraints imposed upon him would not be tantamount to confinement for *Burton* purposes. But he argues that the restraints equated to pretrial confinement in this case because they did not have a legitimate training function and, hence, were unnecessary since he was no longer in the recruit training cycle.[1]

---

1. At the outset we reject the accused's contention that he was assigned to Recruit Casual Section in order to circumvent the decision of the magistrate who ordered his release from pretrial confinement. He was treated no differently from any other recruit who could not continue in the regular training cycle because of disciplinary or other problems. We attach

Administrative restriction may be imposed in the interests of training or discipline. *United States v. Robinson*, 3 M.J. 65, 67 (C.M.A.1977). *See United States v. Haynes*, 15 U.S.C.M.A. 122, 35 C.M.R. 94 (1964). The ordinary service member may be required to perform labor as arduous as that demanded of the sentenced prisoner as long as he is not compelled to perform it in the company of or under the same conditions as the prisoner. *United States v. Bayhand*, 6 U.S.C.M.A. 762, 771, 21 C.M.R. 84, 93 (1956). He may be subjected to reasonable controls and restraints as long as they are not punitive. *See United States v. Southers*, 12 M.J. 924 (N.M.C.M.R.1982). The reasons for the controls and whether they are imposed upon those who are not in a disciplinary status are relevant in ascertaining whether they amount to pretrial restraint for speedy trial purposes. *See United States v. Powell, supra.*

Applying these principles we reject the accused's claim that the conditions to which he, a recruit, was subjected were tantamount to pretrial confinement, because, although they were generally the same as those imposed upon ordinary recruits in the regular training cycle, he was not in the regular training cycle and could not be reasonably expected to return to it. He was still subject to military discipline and in the interests of that discipline could, as a recruit at a recruit depot, be subjected to restraints similar to those imposed on all recruits. *Cf. United States v. Haynes, supra.* These restraints were not devised as punitive measures, but as legitimate measures in the interests of discipline in a recruit environment.[2] Although other measures could have been used in the further-

ance of these objectives in this environment, we refuse to characterize the measures used as pretrial restraint for speedy trial purposes. The accused was not automatically entitled to the privileges earned by graduation from recruit training. Therefore, we conclude that the restraints to which he was subjected in Recruit Casual Section were not tantamount to pretrial confinement. Hence, the *Burton* presumption of denial of speedy trial is inapplicable and the test for determining whether the accused has been denied a speedy trial is whether the Government has proceeded with reasonable diligence and without deliberate oppression of the accused or a lack of concern for the requirement of expeditious prosecution. *United States v. Hagler*, 7 M.J. 944, 947 (N.C.M.R.1979). Using this standard we find that the accused has not been denied a speedy trial.

Accordingly, the findings of guilty and only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for 12 months, forfeiture of all pay and allowances for 9 months, and $367.00 per month for 12 months are affirmed.[3]

MALONE, Judge (concurring):

I readily join Senior Judge Gladis in affirming the findings of guilty. Our modification of appellant's sentence, however, effectively amounting to its mitigation has resulted in what I believe to be a generally unnecessary and, under the circumstances of this case, unwarranted frustration of the sentencing powers and intentions of the court below as approved on review by the convening authority. We are compelled to intervene on appellant's behalf not only be-

no significance to the fact that in an exceptional case a deserter who had been dropped from the rolls of the Recruit Training Battalion was not assigned to Recruit Casual Section when he was returned after a 10-year absence.

2. We define discipline here in the sense of control gained by enforcing obedience to orders, not as punishment. *See* Webster's Third New International Dictionary (1971).

3. We modify the forfeitures to conform to the policy that an accused shall not be deprived of more than two-thirds of his pay after he has been released from confinement. *See Manual for Courts-Martial, 1969 (Rev.),* paragraph 88*b.* The forfeitures here applied only to pay and allowances becoming due on and after the date of the convening authority's action nearly 3 months after the sentence was adjudged and confinement commenced to run. Article 57, Uniform Code of Military Justice, 10 U.S.C. § 857.

cause of the sound executive policy of limiting forfeitures to no more than two-thirds of an accused's pay for any month not served in the confinement; paragraph 88*b*, *Manual for Courts-Martial, 1969 (Rev.)* (MCM); but also because of the interaction of that policy with the effective dates of application of appellant's sentence as mandated by Article 57, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 857.

These various dates are significant in that although the service of the sentence to confinement commenced to run from 5 March 1981, the date appellant's sentence was adjudged, (Article 57(b), UCMJ), the sentence to total forfeitures was not capable of application until the convening authority took his action on the later date, 28 May 1981. Article 57(a), UCMJ. Mere acceptance of the realities of the every day functioning of the military justice system, if not common sense, good judgment, and logic, should convince even the most devoted idealist that convening authorities are not going to be taking their action, as indeed they should not, concomitantly with the commencement of the running of the sentence to confinement.

Yet, this necessary delay results in an undeserving accused serving a sentence to confinement while drawing full pay and allowances until the convening authority takes his action. The anomaly of an accused whose conviction at a relatively short, uncomplicated proceeding which results in the early completion of the convening authority's action giving nearly full effect to a sentence to total forfeitures and a situation such as that described herein hardly engenders a sense of justice. Indeed, how often has one seen the sentencing intentions of court members frustrated when, having deemed forfeitures, confinement, and a discharge to be appropriate, they adjudge such a sentence expecting the accused to suffer those forfeitures throughout the entire period of service remaining until discharged, only later to discover the accused has suffered only a fraction of the forfeitures they expected to be withheld as punishment?

There seems to me little reason that adjudged forfeitures should not begin to be withheld coincidentally with the running of an accused's unsuspended and undeferred sentence to confinement. To do otherwise does nothing more than perpetuate confusion and create administrative hardship for convening authorities and their disbursing agents, as well as provide succor to those elements of discontent generated by the injustice of disparate treatment of the adjudged forfeitures of two accused solely upon the basis of such vagaries as length of record, the absence *vel non* of complicated issues, the workload of court reporters and reviewing staff judge advocates, etc.

It is not as if Article 57(a) is a carryover of long standing tradition and practice within the military justice system. To the contrary, its introduction into the law produced the following testimony before Congress:

> This article demands much elucidation. It is involved and ambiguous. I find it impossible of interpretation. It is a new portion and new in the law. The armed services should be questioned whether they can interpret the section reasonably.

*Hearings on H.R. 2498 before a Subcomm. of the House Comm. on Armed Services,* 81st Cong., 1st Sess. 822 (1949). I submit that assessment of Article 57(a) to be nearly as accurate today as it was 33 years ago. It still requires elucidation; is interminably involved and apparently no less ambiguous despite 33 years of familiarity; and the continued difficulty in its interpretation and reasonable, just implementation demands a reassessment by the armed services and Congress of its value, if it indeed ever had any. Because the legislative history is silent as to why this differing application of Articles 57(a) and 57(b) was considered necessary in 1949, it seems unlikely the services can justify the anomaly today.

I would comment finally on the fact that, in effectuating the policy manifested by paragraph 88*b*, MCM, we have limited the period partial forfeitures are to be withheld to 12 months. Paragraph 126*h*(2) of the MCM states; "Unless a total forfeiture is

adjudged, a sentence to forfeiture deprives the accused of the amount expressly stated in the sentence and applies for the period of time expressly stated." As total forfeitures *were* adjudged in this instance, there existed no necessity for an expression of the period of their application, unless of course the military judge intended the accused to benefit by such a limitation. Therefore, the manifest intention of the sentence *sub judice* is that forfeitures shall operate throughout the unexpired portion of the appellant's term of service. *United States v. Czerwonky*, 32 C.M.R. 676 (N.B.R.1962); *United States v. McNeece*, 30 C.M.R. 453 (A.B.R. 1960), *petition for review by U.S.C.M.A. denied*, 30 C.M.R. 417. *Also see Pinkston*, 49 C.M.R. 359 (N.C.M.R.1974). But *cf., United States v. Allen*, No. 70 0476 (N.C.M. R.1970); *United States v. Speight*, No. 71 1329 (N.C.M.R. 23 June 1971).

With this in mind, I normally would feel constrained to affirm partial forfeitures for the remaining unexpired portion of the appellant's term of service or until he is separated from that service, whichever shall occur sooner. In this instance however, if for some reason appellant's sentence to a bad-conduct discharge was to be disapproved or remitted, those forfeitures would apply throughout a remaining term of service of nearly four years. To that extent, appellant's sentence to forfeitures would be inappropriate. Accordingly, I also concur in the sentence affirmed by the Court for reasons and with the reservations expressed herein.

BYRNE, Judge (concurring):

I join in Judge MALONE's concurring opinion.