338

UNITED STATES, Appellee,

v.

**Richard G. BROWND, Captain, U. S. Air Force, Appellant.**

No. 35,288.

ACM 22253.

U. S. Court of Military Appeals.

April 9, 1979.

For Appellant: Captain Thomas S. Markiewicz (argued); Colonel B. Ellis Phillips (on brief).

For Appellee: Colonel Julius C. Ullerich, Jr. (argued); Major Alvin E. Schlechter (on brief).

For Amicus Curiae: Eugene R. Fidell, David F. Addlestone, Bruce J. Ennis, Ronald W. Meister, Steven S. Honigman, Thomas M. Geisler, Jr. (on brief) for the American Civil Liberties Union Foundation.

Opinion of the Court

FLETCHER, Chief Judge:

In this case the petitioner calls upon us to review the convening authority's exercise of discretion in deferring sentence to confinement under Article 57(d), Uniform Code of Military Justice, 10 U.S.C. § 857(d). We

find that in this instance the convening authority did abuse his discretion. The standard set forth below is the criteria for judging a convening authority's future determination of a sentence deferment request.

The salient facts are not in dispute. Included in the appellant's sentence, following his general court-martial conviction, was confinement at hard labor for five months.[1] The day after trial, through his military defense counsel, the appellant in writing requested that the convening authority defer this confinement, urging that there was no evidence of an inclination of the appellant to flee; that he possessed substantial personal property in the community; that his offenses were not violent ones; that his profession of medicine made recurrence of the offenses unlikely and that the appellant had responsibility for his six-year-old daughter as well as extensive financial obligations. Four days later the convening authority denied the request. In a letter to the appellant he advised him that "deferment of confinement would not serve the best interests of the United States Air Force."

Article 57(d) provides the following:

(d) On application by an accused who is under sentence to confinement that has not been ordered executed, the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement. The deferment shall terminate when the sentence is ordered executed. The deferment may be rescinded at any time by the officer who granted it or, if the accused is no longer under his jurisdiction, by the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned.

■ Unfortunately, however, no guidelines regarding standards for evaluation of the convening authority's exercise of discretion are found either in this statute or elsewhere in the Uniform Code of Military Justice. Furthermore, no official is designated to establish standards governing exercise of the convening authority's discretion. We are not persuaded that "sole discretion" is absolute and unreviewable. Rather, we are impelled by our judicial responsibility to conduct a review of the convening authority's action to determine whether he has abused his discretion.

This view reflects agreement with Judge Perry's rationale as expressed in his dissent to our denial of a petition for extraordinary relief in *Corley v. Thurman*, 3 M.J. 192 (C.M.A.1977). Now that the question is properly before us, we acknowledge the force of his argument regarding proper exercise of the convening authority's discretion.

■ However, we believe the proper standard for our review in this instance to be that of the American Bar Association:

(b) Release should not be granted unless the court finds that there is no substantial risk the appellant will not appear to answer the judgment following conclusion of the appellate proceedings and that the appellant is not likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice. In making this determination, the court should take into account the nature of the crime and length of sentence imposed as well as the factors relevant to pretrial release.

ABA Standards, Criminal Appeals § 2.5(b) (1970).[2]

---

1. Captain Richard G. Brownd was found guilty of a charge and two specifications of violating Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, and a charge and specification of violating Article 92, UCMJ, 10 U.S.C. § 892. He was, in addition to the confinement, sentenced to dismissal, a fine of $5,000 and forfeiture of all pay and allowances. The convening authority approved the findings and sentence as adjudged. The Court of Military Review affirmed the sentence.

2. *See contra*, Bail Reform Act (18 U.S.C. §§ 3141–52).

■ We are confident that this burden of demonstrating improbability of flight or lack of likelihood of crime, intimidation of witnesses, or interference with the administration of justice properly lies with the petitioner. He must demonstrate the absence of such threats and danger of flight. In response to a request for release under Article 57(d), the convening authority should exercise his discretion and weigh the factors illuminated by the defense counsel against the community interests and, if petitioner has not met his burden, no abuse of discretion lies in a denial of the request.

In the instant case, a bald-faced pronunciamento from the convening authority denying deferment as not "in the best interests of the United States Air Force" is insufficient in light of propounded assertions regarding the accused submitted with the request to the convening authority. The staff judge advocate's advice to the convening authority (as suggested in the record) that a denial was warranted in that officers should be treated no differently from enlisted men and that justice should be swift is strictly irrelevant under the standard we have now laid down for the convening authority.

■ All of appellant's offenses were nonviolent in nature. During an extensive pretrial investigation, no attempt to flee was evidenced. This California medical doctor had no prior conviction and was in control of a minor daughter and substantial personal property. These details were asserted in the request to the convening authority and tip the balance in favor of the accused's release. Thus, under the facts of this case, we conclude that the convening authority abused his discretion in failing to grant appellant's request for deferment of the confinement.

However, in this case, the issue is moot; therefore, we decline relief. *See United States v. Sitton*, 5 M.J. 394 (C.M.A.1978).

The decision of the United States Air Force Court of Military Review is affirmed.

PERRY, Judge (concurring):

In my dissent in *Corley v. Thurman*, 3 M.J. 192 (C.M.A.1977), I addressed at some length "[w]hat, if any, guidelines exist in the exercise of the convening authority's sole discretion under Article 57(d) of the Code [Uniform Code of Military Justice, 10 U.S.C. § 857(d)] in resolving a petitioner's request for a deferment of his confinement pending appeal of his conviction." *Id.* at 194. In parts II and III of that opinion,[1] I expressed the view that the convening authority's discretion is not unfettered; that its exercise is reviewable for abuse; and that in the absence of standards articulated in the Uniform Code guiding the exercise of the convening authority's discretion and in the absence of an authorization in the Code for some official to promulgate such standards by which an alleged abuse might be measured, "this Court must formulate its own standards by which it will review the exercise of the convening authority's discretion for an abuse; otherwise, our responsibility to conduct such a review on proper application therefor would be thwarted." *Id.* at 196 (footnote omitted). Now, since Chief Judge Fletcher has embraced my views, I concur.

The point where the Chief Judge's instant opinion departs from my dissenting opinion in *Corley* is where the determinative burden lies. In *Corley*, I noted that both the Bail Reform Act[2] in use in civilian

---

1. Part I concerned the propriety of addressing ourselves to this issue at that time in a petition for extraordinary relief. For the reasons stated therein, *Corley v. Thurman*, 3 M.J. 192, 193 (C.M.A.1977) (Perry, J. dissenting), I determined that a resolution of the legal question was proper and appropriate. However, the majority concluded otherwise, denying the petition "without prejudice to the right to raise the issues presented therein during the course of appeal pursuant to Articles 66 and 67, respec-

tively, Uniform Code of Military Justice, 10 U.S.C. §§ 866–67." *Corley v. Thurman*, 3 M.J. 192 (C.M.A.1977). A similar fate befell the appellant's petition for a writ of habeas corpus, again over my dissent. *Brownd v. Commander*, 3 M.J. 256 (C.M.A.1977).

2. Bail Reform Act of 1966, 18 U.S.C. §§ 3141–3152. 18 U.S.C. § 3148 states that a person convicted in federal court of an offense whose case is pending appeal

federal courts and section 2.5(b) of the ABA Standards relating to criminal appeals [3] invoke the same general standards guiding the post-conviction release decision—"risk of flight and danger to the community"—and both utilize "pretrial release factors" in applying those standards. However, whereas the ABA standard requires that a *petitioner* demonstrate "the *absence* of such" risks in order to *win* release, the Bail Reform Act gives the *Government* "the burden of showing the *presence* of them" in order to *prevent* release. I expressed the view that

> [A]s to who has the burden once such a request [for release] has been made, I agree with the language in *Levy v. Resor, supra* [17 U.S.C.M.A. 135, 37 C.M.R. 399 (1967)] at 139, 37 C.M.R. 403:

>> "It is apparent, therefore, that if a military prisoner is entitled to bail [post conviction pending appeal, which he now is under Article 57(d)], the burden is on the Government to show why it should not be granted."

> The placing of the burden on the Government is consistent with the locus of responsibility under the Bail Reform Act and, therefore, is consistent with the expressed intent of the Congress in enacting Article 57(d), to create [6]

>> "for the first time a procedure similar to release on bail pending appeal in civilian courts."

---

[6] *Id.* [*Collier v. United States,* 19 U.S.C.M.A. 511, 515, 42 C.M.R. 113, 117 (1970)], *quoting* S.Rep.No.1601, 90th Cong. 2d Sess., U.S.Code & Admin.News 1968, pp. 4501, 4503.

*Corley v. Thurman, supra* at 197.

Chief Judge Fletcher, however, has opined that § 2.5(b) of the ABA Standards,

> shall be treated in accordance with the provisions of section 3146 [pretrial release in noncapital cases] unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained.

3. A.B.A. Standards, Criminal Appeals § 2.5(b) (1970), requires:

*supra,* should apply in this area. While I adhere to my earlier expressed preference for the Bail Reform Act standard because I believe much can be said for military practice conforming to that in the federal district courts whenever possible, I do not believe that the standard is mandated, and I am persuaded that on this occasion a majority of this Court must speak with a single voice. Therefore, I now join the Chief Judge in embracing the standard expressed in § 2.5(b) of the ABA Standards as the guideline this Court will use to measure an alleged abuse of discretion by a convening authority in denying a request for release pending appeal under Article 57(d) of the Code.

Finally, I must note that while I concur in affirming the decision of the Court of Military Review, my concurrence rests upon the fact that the confinement portion of the sentence herein has been completely served—thus rendering the application for release moot. *United States v. Sitton,* 5 M.J. 394 (C.M.A.1978) (Perry, J., concurring).

COOK, Judge (concurring in the result):

In my opinion, the majority misperceive the function of Article 57(d), Uniform Code of Military Justice, 10 U.S.C. § 857(d), and fail to recognize the importance of the difference between a commander's decision to confine a convicted accused pending review of his conviction, as allowed by Article 13, UCMJ, 10 U.S.C. § 813,[1] and his decision to deny an accused's application, under subdivision (d), to "defer service of . . .

> Release should not be granted unless the court finds that there is no substantial risk the appellant will not appear to answer the judgment following conclusion of the appellate proceedings and that the appellant is not likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice. In making this determination, the court should take into account the nature of the crime and length of sentence imposed as well as the factors relevant to pretrial release.

1. *See United States v. Teague,* 3 U.S.C.M.A. 317, 323–24, 12 C.M.R. 73, 79–80 (1953).

confinement." I agree, however, with their conclusion that the decision of the Court of Military Review must be affirmed.

The majority hold that accused's application for deferment was improperly denied, but, they refuse him relief because "the issue is moot," since the term of adjudged confinement has expired. The accused applied to this Court for relief from the alleged abuse of discretion before his term of confinement had run. We turned aside his application "without prejudice to the right to raise" the matter again "during the [regular] course of appeal." 3 M.J. 256 (C.M.A. 1977). Now that he is in the regular course of appeal, he is told the Court can do nothing because the confinement part of his sentence has expired. This sequence of decision has aspects of Heller's *Catch-22*. I believe the accused and the Government are entitled to more than this summary disposition of the appeal.

Before setting out my views of the issue posed by the appeal, I am impelled to make some preliminary comments. First, no constitutional right to bail applies in the military, and, more particularly, a convicted accused has no right to bail pending review of his conviction. Secondly, the 1966 Bail Reform Act, which provides for a stay of confinement pending appeal, expressly exempts the military from its provisions. *See Levy v. Resor*, 17 U.S.C.M.A. 135, 37 C.M.R. 399 (1967). In view of the congressional purpose to treat a military accused differently from a convicted defendant in a federal civilian court, I unqualifiedly reject the majority's incorporation into military law of standards that are designed for the civilian community. *See* my opinion in *United States v. Heard*, 3 M.J. 14, 25 (C.M.A.1977).

Turning to the merits, the issue has been posed by the accused, and accepted by the majority, in terms of whether the convening authority abused his discretion in denying an application under Article 57(d) to "defer service of the sentence to confinement" adjudged by the court-martial. In those terms, the accused has no remedy.

Assuming, as the accused and the majority apparently do, that improper denial of deferment alone makes illegal a concomitant decision to confine the accused pending review of his conviction[2] and that such illegal post-trial confinement entitles accused to the same relief as for illegal pretrial confinement, the rule adopted by my Brothers affords no relief in this case. Their rule is that illegal pretrial confinement entitles an accused only to "administrative credit of a period equal to that of the improper confinement." *United States v. Malia*, 6 M.J. 65, 68 (C.M.A.1978). As accused's term of confinement, which was 5 months, has expired by virtue of subdivision (b) of Article 57, which provides that confinement "begins to run from the date the sentence is adjudged by the court-martial," administrative credit accords him no relief. My view of the remedy for illegal confinement, however, is different from my Brothers, and that difference requires me to consider the merits of accused's claim for relief. *See* my separate opinion in *United States v. Malia, supra.*

To me, the accused's real complaint is not simply that his "service" of confinement in execution of the sentence should have been postponed until after the requisite reviews of his conviction, but rather that he should have been permitted to remain at liberty pending those reviews, and while at liberty, he should have had the benefit of the running of the term of confinement "from the date the sentence . . . [was] adjudged by the court-martial" as provided by

---

2. Every case involving a punitive separation from the service or confinement for one year or more must be reviewed by the Court of Military Review of the accused's service, and, thereafter, further review may be granted by this Court. *See* Articles 66 and 67, Uniform Code of Military Justice, 10 U.S.C. §§ 866 and 867. Pending completion of these reviews, the sentence cannot be ordered into execution un-

less the conditions provided by Article 71(c), UCMJ, 10 U.S.C. § 871(c), are met. The relevant conditions are:

No sentence which includes, unsuspended, a dishonorable or bad-conduct discharge, or confinement for one year or more, may be executed until affirmed by a Court of Military Review and, in cases reviewed by it, the Court of Military Appeals.

subdivision (b) of Article 57. This claim rests upon the unique rule on confinement that obtains in the military.

While subdivision (d) of Article 57 speaks of deferment of "service of the sentence to confinement," that phrase manifestly does not mean confinement in execution of the sentence, which is the meaning it has in civilian practice. *See* Fed.R.Crim.P. 38(a)(2); Wright, Federal Practice and Procedure § 632. Subdivision (d) itself differentiates its subject matter from confinement in execution of the sentence by providing that "deferment shall terminate when the sentence is ordered executed." In *Reed v. Ohman*, 19 U.S.C.M.A. 110, 116 n. 3, 41 C.M.R. 110, 116 (1969), the Court observed, correctly I believe, that temporary confinement pending appellate review is not service of the sentence. That point is further emphasized by Article 13 of the Code, paragraphs 18*b*(3) and 125, Manual for Courts-Martial, United States, 1969 (Revised edition), and our cases which forbid treating an accused confined to await review of his case as a prisoner in confinement in execution of his sentence. *See Reed v. Ohman, supra* at 116–17.

Pending appeal of a conviction and sentence that includes confinement, the defendant in a federal civilian court may be admitted to bail. Fed.R.Crim.P. 38(a)(2); Wright, *op. cit.* § 632. During the period he is allowed at liberty, conditioned or unrestricted, the defendant is not serving his sentence, and he earns no credit on the term of confinement included in his sentence. A military accused is treated differently.

Under subdivision (b) of Article 57, a term of confinement "begins to run from the date the sentence is adjudged by the court-martial." Article 71(c), UCMJ, 10 U.S.C. § 871(c), provides that a sentence extending to a punitive separation, such as the dismissal adjudged in this case, cannot be ordered into execution until completion of the reviews prescribed by the Code. Combined, these provisions confer an enormous benefit upon an accused whose sentence includes confinement. Specifically, by operation of these provisions, an accused, at liberty pending review of his case, may never have to face confinement of any kind because the full term of adjudged confinement may run out during the time required to complete the requisite reviews. Consequently, the dominant concern of an accused whose sentence includes confinement is to remain at liberty pending review of his conviction.

Article 13 of the Uniform Code authorizes, but does not demand, confinement of an accused pending review of his case. Both before and after the enactment of subdivision (d) of Article 57, the President provided guidelines for such confinement. This Court construed the earlier guidelines as having the force of law. *Levy v. Resor, supra* at 139–40. *See also Collier v. United States*, 19 U.S.C.M.A. 511, 514, 42 C.M.R. 113, 116 (1970). I agree with this view of the President's authority, and I disagree with my Brothers that no guidelines exist. *See also* my concurring opinion in *United States v. Newcomb*, 5 M.J. 4, 7 (C.M.A. 1978), and my opinion in *United States v. Heard, supra.*

Before subdivision (d) became part of Article 57, paragraph 21*d*, Manual for Courts-Martial, United States, 1951, provided for such physical restraint of the accused pending appellate review as might be deemed "necessary." *See also* paragraphs 44*e*(2) and 89*c*(6), Manual, *supra.* In *Levy v. Resor, supra* at 140, the Court held that the necessity for restraint in each case depended upon the facts of that case, and the commander's exercise of his discretion to impose confinement was reviewable for abuse. After enactment of subdivision (d), the Court reaffirmed the rule as to the reviewability of a decision to confine. For example, in *Collier v. United States, supra* at 515–16, the Court said:

The legality of post-trial restraint pending appellate review of a court-martial conviction is well established. . . . And, as we said in *Reed [v. Ohman]*, "the decision to restrain is reviewable for abuse of discretion."

In discussing deferment, the 1969 Manual recognizes that circumstances establishing the necessity to confine may also have impact upon an application to defer. Three circumstances are expressly mentioned as weighing against the applicant: that "the accused may be a danger to the community or . . . that he may repeat the offense"; or that he may flee. Paragraph 88 f, Manual, *supra*. The enumeration impresses me as constituting additional guidelines to be considered in determining whether a convicted accused should be confined pending review of his case. *Cf. United States v. Daniels*, 19 U.S.C.M.A. 518, 42 C.M.R. 120 (1970).

In *Reed v. Ohman, supra* at 116, the Court suggested that Congress intended subdivision (d) to provide a means by which an accused could seek to avoid "confinement as an *appropriate* restraint pending appeal." [Emphasis supplied.] I am of the same opinion. The majority observe that Congress did not specify guidelines for consideration of accused's application for deferment. They perceive the omission as sanctioning their adoption of civilian guidelines. I see the omission as emphasizing the congressional declaration that the commander's decision whether or not to defer rests "in his sole discretion." Article 57(d), *supra*.

Although the Court, in *Reed v. Ohman, supra* at 116, avoided consideration of the meaning of deferment, I have no doubt it does not concern service of confinement in execution of the sentence. Deferment is concerned with the running of the term of confinement from the date of adjudgment of sentence by the court-martial that is decreed by subdivision (b) of Article 57; it interrupts that process.

If, as a matter of law, an accused is entitled to remain at liberty pending review of his case, why should he surrender his right to the running of the term of confinement? Oppositely, if a compelling need exists to confine the accused after trial, why should a commander nonetheless allow him to *remain at liberty?* At each of these extremes, the situation precludes invocation of deferment. I am convinced, therefore,

deferment is intended for the intermediate case—the one in which confinement clearly appears "as an appropriate restraint pending appeal," but the accused still wishes to avoid it. It is at this point that deferment provides what might be called a "second chance" for the accused to stay out of confinement pending review.

As I view the statutory and Manual pattern for post-trial restraint of an accused, the justification to confine him pending review is different from the justification to toll the running of the term of confinement by deferment; and the right to a review of each decision is different. The decision to confine must be made in light of the guidelines provided therefor, and an adverse decision is subject to review for abuse of discretion. The decision to defer rests within the "sole discretion" of the commander, and a discretion of that kind plainly sanctions no review.

Earlier, I pointed out that Article 71 imposes severe constraints on ordering a sentence into execution before completion of appellate review. During the time of review, however, the confinement term of a sentence continues to run from the date adjudged by the court-martial. I also observed earlier that if an accused remains at liberty pending review of his case, so much time may pass before completion of the review that accused may never be confined in execution of the sentence. However, faced with the probability of lawful confinement, an accused awaiting review might perceive personal advantage in trading off his right to have the term of confinement run for the chance that so much time might elapse, and so many changes of circumstances may occur, before completion of review, that when the time arrives for execution of the sentence, he might have an arguable case for remission of the unexecuted term of confinement. That deferment contemplates some such perceived advantage by the accused is, in my opinion, apparent from the fact that he must initiate the application for deferment. Without accused's consent to surrender the benefit of the running of the term of confinement, the commander cannot defer.

An accused's right to remain at liberty, unless necessity requires that he be confined, exists independent of deferment. In asking for deferment, therefore, the accused does not ask for justice as regards confinement but for mercy—to be treated with greater leniency than the law requires. Subdivision (d) says that whether that request is granted or denied rests in the "sole discretion" of the commander. Mercy, or if one prefers its legalistic term, clemency, is, as Shakespeare observes, "above the sceptred sway. It is enthroned in the hearts of kings."[3] It is not subject to review.

Examining the record, I am satisfied the decision to confine was not an abuse of discretion.[4] But even if I err in that conclusion, illegal confinement, whether before or after trial, cannot impair the validity of findings of guilty. *See United States v. Malia, supra* at 68. Consequently, the accused's postulate that the "incalculable harm" done him requires "the findings of

guilty . . . be set aside and ordered dismissed" lacks merit. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Hightower,* 5 U.S.C.M.A. 385, 18 C.M.R. 9 (1955). As to his sentence, in my view, improper posttrial confinement may justify reassessment of the adjudged sentence, not merely an administrative credit for the period of illegal confinement. *See* my opinion in *United States v. Malia, supra.* On the facts of this case, which include accused's acknowledgement that "in light of the findings of guilty . . . dismissal from the Air Force was a rational sentence," I am convinced the "amount of possible remaining prejudice" does not justify "adjust[ment of] the other aspects of the sentence, as the appellant requests." *United States v. Heard, supra* at 23.

For the reasons noted, I join my Brothers in affirming the decision of the Court of Military Review.

**3.** Merchant of Venice, Act IV, Scene 1, Line 184.

**4.** For a time after adjudgment of sentence, the accused was permitted to remain at liberty to arrange his personal matters. Thereafter, he formally applied for deferment. The application was denied, and he was ordered into confinement pending review of his case. The nature and number of the offenses support a

reasonable conclusion that the accused had seriously compromised his position as an officer and as a military doctor. In *Levy v. Resor,* 17 U.S.C.M.A. 135, 140, 37 C.M.R. 399, 404 (1967), the Court observed that "[t]he character and extent of a series of offenses afford a proper basis for the exercise of discretionary power" to confine an accused pending review of his conviction.