UNITED STATES, Appellee,

v.

First Lieutenant Michael M. PETERSEN,
SSN 242–82–2249, United States
Army, Appellant.

CM 437891.

U. S. Army Court of Military Review.

10 Aug. 1979.

Maurice F. Biddle, Esquire, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major D. David Hostler, JAGC, and Captain Kevin E. O'Brien, JAGC.

Captain Kenneth H. Clevenger, JAGC, argued the cause for appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Major David McNeill, Jr., JAGC.

Before JONES, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT AND ACTION ON PETITION FOR NEW TRIAL

JONES, Senior Judge:

The appellant was convicted of wrongfully possessing 932 grams of hashish in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The adjudged and approved sentence extended to dismissal, confinement at hard labor for two years, and forfeiture of all pay and allowances.

The appellant petitions for a new trial under the provision of Article 73, UCMJ, 10 U.S.C. § 873, on the ground of newly discovered evidence; and assigns two errors on his appeal pursuant to review of his case under Article 66, UCMJ, 10 U.S.C. § 866. We will address the Petition for New Trial first.

The appellant (a lieutenant) and three enlisted men (SGT Brooks, SP4 Bowman, SP4 Reed) proceeded from their location in Germany to Amsterdam, Holland, for the Labor Day weekend in September 1978. They went in appellant's car with appellant driving. On the return trip as they crossed the border from Luxembourg into Germany, a military police customs agent stopped the car. In the ensuing search the customs agent found seven planks of hashish in the trunk. The appellant disclaimed any knowledge of the contraband stating that everyone was supposed to have gotten rid of everything before they reached the border. The three enlisted men remained silent.

At trial, the principal witnesses against appellant were the MP customs agent who testified as to the seizure of the hashish and Brooks and Bowman who testified about the trip to Amsterdam and the purchase of the drug by the appellant and Reed. Reed did not testify. He was under charges and was tried a month after appellant.

At his trial, Reed pleaded guilty to the possession of 932 grams of hashish. In a stipulation of fact, he related the facts about the trip and accepted equal involvement with appellant in the purchase and possession of the hashish.[1] After his conviction and transfer to the United States Disciplinary Barracks, Reed gave an affidavit at the behest of appellant's civilian appellate defense counsel in which he (Reed) recanted certain important portions of the stipulation of fact. It is this affidavit which appellant maintains is the newly discovered evidence that merits a new trial.

I

A new trial may be granted under Article 73, UCMJ, on the basis of newly discovered evidence when the petition shows that

(1) the evidence has been discovered since trial,

(2) the evidence could not have been discovered at the time of trial in the exercise of due diligence, and

(3) the evidence if considered by the court-martial would probably result in a more favorable decision for the accused.

We will discuss these conditions separately.

First, the appellant alleges that this newly discovered evidence, the statement by Reed shouldering the blame to the exclusion of the appellant, was not known at the time of trial. He offers no evidence in support of this assertion. At the very least, there should have been a statement from trial defense counsel to support the lack of

1. Reed's conviction was affirmed by this Court without opinion on 18 April 1979, No. 437883.

knowledge that appellate defense counsel now attributes to him (trial defense counsel).

Second, if the information subsequently furnished by Reed was not known at the time of appellant's trial, it should have been discoverable by counsel through due diligence. With the appellant, Bowman and Brooks all professing no knowledge of the hashish, by default Reed was the only one left to have committed the offense. Appellant's counsel should have talked with him or attempted to have talked with him.[2]

There is yet another facet of the first two conditions and that concerns the "availability" of the evidence at the prior trial. Even if appellant's counsel knew or could have known that Reed would ultimately shoulder the entire blame, we do not think that evidence was available to him at the time of appellant's trial. Reed was pending charges and it is inconceivable that his counsel would have let him testify at appellant's trial.[3]

The Government argues that before appellant can maintain successfully that the evidence was not available to him, he had to bring Reed before the court-martial in an Article 39(a), 10 U.S.C. § 839(a) session and establish on the record his refusal to testify. In support of this position the Government points to such a rule in one of our state courts.[4] That rule, however, was based on a state statute, a factor not present here.

We think it unnecessary for appellant to establish unavailability by calling a co-accused where, as here, the circumstances indicate he would not testify. Therefore, although appellant has not established that the evidence was not known at the time of trial or was not discoverable, we believe

that such knowledge would have done him no good. Accordingly, we conclude that appellant has met the first two hurdles and we will proceed to the third—whether this evidence is likely to result in more favorable action for the appellant.

■ We are convinced that the verdict in this case would have been the same even if Reed had testified in accordance with his affidavit. There are several reasons for this conclusion. First is the credibility of Reed. His initial statement of events by way of stipulation and providency inquiry are consistent with the facts brought out at appellant's trial a month earlier. His affidavit given at the Disciplinary Barracks more than three months later and after he had been incarcerated with appellant is contrary to prior evidence. His recantation would be viewed with suspicion, to say the least. Further, Reed was deeply involved in the "drug scene", another factor diminishing his credibility.

The court members chose to believe Brooks and Bowman notwithstanding the attack on their credibility made by the defense. The pair's earlier denial of any knowledge of the hashish can be discounted as a normal reaction when first apprehended and questioned. Their subsequent story held up under strenuous cross-examination. Even trial defense counsel conceded in argument that Brooks was a clean-cut soldier with a very excellent record whose company commander came into court on rebuttal and testified as to his truthfulness. We think Reed's testimony would have had no impact upon the court-martial in diminishing the believability of Brooks, Bowman or the MP customs agent.

---

2. From our previous review of Reed's case, we note that appellant's civilian trial defense counsel apparently initially represented both appellant and Reed. Reed's appointed defense counsel received a postponement of the Article 32, 10 U.S.C.A. § 32 investigation so that the civilian defense counsel could be present. Later, when that investigation was held, the civilian counsel was not present and detailed counsel announced that the former was concerned about a possible conflict of interest. The civilian counsel did not sign Reed's offer to plead guilty; he was not present at Reed's trial and was not mentioned as being counsel; and he did not participate in the post-trial procedures.

3. At the time of appellant's trial, Reed had not submitted his offer to plead guilty.

4. *State v. Gerdes*, S.D., 258 N.W.2d 839 (1977); *State v. Tappe*, 53 S.D. 22, 219 N.W. 882 (1928).

A final reason why we think Reed's testimony would not have produced a more favorable result for appellant is our analysis of the affidavit itself. Some of the salient points:

(a) Reed acknowledges that he, appellant, and Bowman had been to the bar (where drug dealings occurred) before and all agreed to go there on this trip;

(b) Reed acknowledges that appellant knew of "some" hash in the car;

(c) Reed states that he hid the hash because appellant did not want to know anything about purchased drugs;

(d) Reed acknowledges that appellant used drugs but states he was not a dealer;

(e) Reed states that appellant never inquired into the purchase of any drugs and that he (Reed) did all of the dealing and exchanged the money at the bar; he does not state, however, that appellant was not present at the time (the witnesses testified to his presence).

Reed's affidavit was carefully drawn.[5] It is as significant for what is left unsaid as it is for what is said. We think it would have had an inconsequential impact on the trial. Accordingly, the petition for new trial is denied.

## II

■ We turn next to the assigned error concerning the action of the staff judge advocate in deleting a portion of the civilian trial defense counsel's rebuttal to the staff judge advocate's review. The defense counsel objected to the staff judge advocate appending to his review a copy of an official message that included the stipulation of fact used in Reed's case. The defense counsel pointed out that the stipulation had no place in the convening authority's consideration of appellant's guilt. The staff judge advocate agreed and removed the message.

He then asked the defense counsel to revise his rebuttal so that no mention of the offending stipulation was brought to the convening authority's attention. The defense counsel refused.

The staff judge advocate was faced with a dilemma. He could allow the paragraph of the rebuttal with the prejudicial information (that a co-accused had pleaded guilty) to be brought to the attention of the convening authority, with a caution by the staff judge advocate not to consider it, or he could delete the paragraph and caution the convening authority to make no adverse inference from the fact that something had been deleted. He chose the latter course. We find no error in his action. Although we think it better practice to make no change in the defense counsel's rebuttal comments, the deletion made here was justified and was in the best interest of the appellant.

## III

■ In a supplemental assignment of error, the appellant contends that the convening authority at Fort Leavenworth abused his discretion in denying appellant's second request for deferral of his sentence to confinement.[6] An appeal of the denial to The Judge Advocate General met with the same result. The request, the denial, and the action on the appeal all occurred after the United States Court of Military Appeals decision in *United States v. Brownd*, 6 M.J. 338 (C.M.A.1979).

The Court of Military Appeals in *Brownd* stated that a convening authority's action on a request for deferral was reviewable by the courts for an abuse of discretion. That Court adopted as the standard for review, the standard of the American Bar Association, which provides:

Code of Professional Responsibility, American Bar Association.

---

5. Appellant's civilian appellant defense counsel acknowledged during oral argument that he had assisted Reed in preparing the affidavit at the Disciplinary Barracks and that he had not contacted Reed's appointed trial or appellate defense counsel. See Disciplinary Rule 7–104,

6. A first request for deferral was made to, and denied by, the VII Corps commander, the original convening authority in Germany. That action is not contested here.

Release should not be granted unless the court finds that there is no substantial risk the appellant will not appear to answer the judgment following conclusion of the appellate proceedings and that the appellant is not likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice. In making this determination, the court should take into account the nature of the crime and length of sentence imposed as well as the factors relevant to pretrial release. (ABA Standards, Criminal Appeals 2.5(b) (1970)).

The Court went on to state:

We are confident that this burden of demonstrating improbability of flight or lack of likelihood of crime, intimidation of witnesses, or interference with the administration of justice properly lies with the petitioner. He must demonstrate the absence of such threats and danger of flight. In response to a request for release under Article 57(d), [10 U.S.C. § 857(d),] the convening authority should exercise his discretion and weigh the factors illuminated by the defense counsel against the community interests and, if petitioner has not met his burden, no abuse of discretion lies in a denial of the request. (*United States v. Brownd*, 6 M.J. at 340).

In the instant case the request by appellant offered nothing to demonstrate the "improbability of flight or lack of likelihood of crime, intimidation of witnesses, or interference with the administration of justice." In fact, his statement that "As an innocent man, I find it almost unbearable to serve time for something I did not do, much less even knew about" could be interpreted as an indication that he might flee. Even without considering that comment, however, appellant did not meet *his burden* under the ABA standard. Thus the convening authority did not abuse his discretion. The fact that neither the action by the convening authority nor the action on appeal by The Judge Advocate General were couched in the language of the *Brownd* decision is of no consequence.

The Petition for a New Trial is denied. The findings of guilty and the sentence are affirmed.

Judge WATKINS and Judge LEWIS concur.