Robert A. PEARSON, Petitioner,

v.

Brigadier General John V. COX et
al., Respondent.

No. 81–14/NA.

U. S. Court of Military Appeals.

March 23, 1981.

For Petitioner: *Captain E. A. Burnette*, USMC, *Captain Paul H. Voss*, USMC (on petition).

For Respondent: *Commander T. C. Watson, Jr.*, JAGC, USN, *Lieutenant Colonel A. P. Tokarz*, USMC (on petition).

*Opinion of the Court*

EVERETT, Chief Judge:

The petitioner was tried for unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918, by a general court-martial convened by the respondent, Brigadier General Cox. After several sessions of the court-martial, on December 11, 1980, he was convicted of negligent homicide, in violation of Article 134, UCMJ, 10 U.S.C. § 934, and sentenced to the maximum punishment for that offense—bad-conduct discharge, confinement at hard labor for 1 year, total forfeitures, and reduction to the lowest enlisted pay grade. Later on that same day the petitioner requested deferment of confinement at hard labor pursuant to Article 57(d), UCMJ, 10 U.S.C. § 857(d).

On December 12, 1980, the Staff Judge Advocate recommended disapproval of the request, stating in his endorsement (emphasis supplied):

> In the defendant's request, he argues that, prior to the imposition of the court's sentence, he demonstrated that he was not a risk of flight from trial, citing the absence of pretrial restraint and the potential punishment of confinement for life for the charged offense. However, since the accused plead [sic] not guilty, his actions may have been motivated, in part, by his perception of a remote possibility of punishment. With his conviction and sentence of confinement at hard labor for one year, the possibility of punishment has become highly probable. His past conduct and performance of duty should be evaluated in context with the realities he now faces.
>
> The defendant has no local family ties to the area, except for two brothers in San Diego County who are in a transient status in the armed forces. His mother and the remainder of his relatives are located some 3000 miles away on the East Coast. Additionally, the defendant has no property ties to the local area.

> The defendant has been found guilty of a violent crime involving the death of another Marine. The crime occurred at the Enlisted Club located aboard the Station. *Should the defendant's confinement be deferred, reference (a) [Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 88f] precludes him from being restricted from patronizing the club* as a substitute for the confinement deferred. Since this case has gained widespread notoriety by those Marines patronizing the club, the defendant's presence would pose a serious threat to the community. In my opinion, the real possibility exists that he could find himself under similar circumstances as those of the crime and the offense could be repeated.
>
> The risk of flight by the defendant has been enhanced with the increased probability that punishment will occur and the absence of ties to the local area. The justification provided by the accused has failed to counterbalance the real possibility of flight. It is my recommendation the request should be denied.

In denying the request for deferment on the same day, the respondent convening authority simply adopted "the reasons set forth in the preceding endorsement"—that is, in the Staff Judge Advocate's recommendation for disapproval.

Thereafter, petitioner sought extraordinary relief from this Court; and we ordered that the respondents show cause why relief should not be granted. In that order we noted that we viewed this issue as being raised by the petition:

> Did the staff judge advocate err in advising the convening authority that if petitioner's deferment request were granted, petitioner could not be restricted from entering the local enlisted club under the provisions of paragraph 88f, MCM, 1969, (Rev.)?

I

■ In resisting the petition, respondents, through appellate government counsel, have argued that this Court has no jurisdiction to review the "sole discretion"

granted to the convening authority by Article 57(d) of the Code. However, this argument misconceives the thrust of the issue with which we are concerned. In effect, the staff judge advocate imposed a limitation on the convening authority's discretion by informing him that, under paragraph 88f of the Manual for Courts-Martial, he had no power to defer the sentence to confinement and simultaneously impose on petitioner a restriction from entering the Enlisted Club. Our concern, accordingly, is not with the manner in which the respondent convening authority exercised his discretion but instead with whether any unwarranted restriction may have been imposed upon the exercise of that discretion by the staff judge advocate.

Respondents also argue that any issue as to abuse of discretion or error of law in connection with deferment of confinement should only be dealt with in the regular course of appellate review. They contend that, even though here the regular appellate review may not be completed until after the confinement has been fully served, any inequity can be remedied by reassessing the sentence and remitting forfeitures. This reassessment apparently would utilize the calculus provided by the Table of Equivalent Punishments in paragraph 127c(2), Manual, *supra*, whereunder one day's confinement equates to forfeiture of one day's pay.

Of course, in some sentences the forfeitures imposed might not be adequate in amount to permit this reassessment—especially since forfeitures begin to take effect at a different time than confinement. In any event, the concern that has traditionally been evidenced for deprivations of liberty, cf. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), is inconsistent with substituting money for time (forfeitures for confinement) when some other remedy is available. *See Corley v. Thurman*, 3 M.J. 192, 193 (C.M.A.1977) (Perry, J., dissenting). Indeed, in *United States v. Gragg*, 10 M.J. 286 (C.M.A.Misc.1981), we gave extraordinary relief to an appellant who claimed that he had already completely served his sentence to confinement—even though, under respondents' reasoning here,

prejudice to Gragg could have been eliminated on direct review by reducing the forfeitures to compensate for the excess time served in confinement.

Congress has given the convening authority broad discretion to decide on the appropriateness of deferring confinement. Therefore, rarely will there be a sound basis for seeking extraordinary relief. However, in those few instances where the exercise or non-exercise of discretion is suffused with legal error, extraordinary relief is available. *See United States v. Brownd*, 6 M.J. 338 (C.M.A.1979).

During oral argument a question was also raised as to whether this petition should have been submitted to the United States Navy Court of Military Review, rather than to us. Usually, it is desirable for such a petition to be submitted initially to the Court of Military Review—subject to possible later review in this Court. Certainly, *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979), establishes that the Court of Military Review has the All-Writs power necessary to act on such petitions. However, there is no jurisdictional limitation that precludes us from considering such a petition in the first instance, even though we may, as a matter of discretion, decide to remand it to the appropriate Court of Military Review for disposition or to dismiss it without prejudice to resubmission of the petition to the Court of Military Review.

II

Since the convening authority chose simply to incorporate by reference the reasons stated in the Staff Judge Advocate's endorsement, we cannot assume that any of those reasons stated by the staff judge advocate was immaterial to his decision. While it is conceivable that the risk of flight may have played the major part in that decision, we cannot discount the possibility that the convening authority denied petitioner's application because he was unwilling to defer confinement unless at the same time he could prohibit the petitioner from entering the Enlisted Men's Club. Accordingly, we must inquire whether such a restriction could lawfully have been imposed in conjunction with deferment.

■ Article 57(d) of the Code states only that "the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement." Paragraph 88f of the Manual adds:

When deferment is granted, no form of restriction to specified limits or any other limitation on the accused's liberty shall be ordered as a substitute for the confinement so deferred. The deferring of a sentence will not in and of itself give rise to any other form of limitation on an accused's liberty. An accused may, however, be restricted to certain specified limits or have his liberty curtailed during the period of a deferred sentence to confinement for any independent reason which would warrant this action being taken. See 20a and b.

Some latent ambiguity may exist in the quoted language. However, when the purpose of Article 57(d) is considered, that ambiguity dissolves. We note that, in connection with a grant of deferment, "no form of restriction to specified limits or any other limitation on the accused's liberty shall be ordered as a *substitute* for the confinement so deferred." (Emphasis supplied.) However, the accused "may ... be restricted to certain specified limits or have his liberty curtailed during the period of a deferred sentence to confinement for *any independent reason* which would warrant his action being taken." (Emphasis supplied.)

In connection with this language, respondents have invited our attention to *United States v. Haynes*, 15 U.S.C.M.A. 122, 35 C.M.R. 94 (1964), which discusses the difference between an "administrative restriction" and a "punitive" restriction. They suggest that petitioner could not have been restricted administratively in connection with a deferment of confinement because the restriction would not be authorized by

the Manual for Courts-Martial. The wording of paragraph 20b of the 1951 Manual—which *Haynes* applied—conforms to that of the 1969 Manual. It states that

[t]hus an accused person may be required to remain within a specified area at specified times either because his continued presence pending investigation may be necessary or because it may be considered a wise precaution to restrict him to such an area in order that he may not again be exposed to the temptation of misconduct similar to that for which he is already under charges.

In view of the circumstance that petitioner had been convicted of negligent homicide arising out of an altercation in the Enlisted Club, a restriction against entering that club during a period of deferment of confinement might seem justified under the literal wording of paragraph 20b, because it would prevent him from being "exposed to the temptation of misconduct similar to that for which he is already under charges."[1] Apparently, however, the staff judge advocate was not apprehensive that petitioner might be tempted to engage once again in such misconduct but instead feared that he might be provoked by others. Even on that premise, the restriction would be permissible. The sentence quoted from paragraph 20b seems to be only illustrative; and we are sure that it was not intended to exhaust the power of a convening authority to impose reasonable limitations on liberty in connection with a deferment of confinement.

The Military Justice Act of 1968 was, to a significant extent, the product of efforts by Senator Sam J. Ervin, Jr., who chaired the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary. That same subcommittee, under Senator Ervin's chairmanship, had played a major role in the enactment of the Bail Reform Act of 1966. We have no doubt that, in adding Article 57(d) to the Uniform Code, Senator Ervin and his colleagues in the

---

1. The circumstance that petitioner has already been found guilty of the charges by a court-martial should not weaken the basis here for imposing the restriction.

Congress were well aware of the bail reform legislation that Congress had adopted a few years before and which granted broad authority to judicial officers to release defendants under conditions of release that were a substitute for monetary bail. *See* 18 U.S.C. § 3146. For example, the Bail Reform Act (§ 3146) permits "a condition requiring that the person return to custody after specified hours"—a version of work release. Indeed, even in capital cases or after conviction, suitable conditions may be imposed so that a defendant may be released from confinement, 18 U.S.C. § 3148. Of course, after conviction the court or judge is expressly authorized to consider not only the likelihood of flight but also the risk that a defendant will "pose a danger to any other person or to the community."[2] 18 U.S.C. § 3148. *Cf.* 18 U.S.C. § 3146. Apparently, the Bail Reform Act does not require any credit on sentence for a period during which a person has been released prior to trial or pending appeal.

■ With the perspective supplied by the Bail Reform Act, we are convinced that Article 57(d) of the Uniform Code intended for the convening authority to have the same broad discretion in imposing conditions on deferment of confinement that a federal magistrate or judge possesses with respect to a defendant seeking release pending appeal. This interpretation seems especially appropriate since, otherwise, as appellate government counsel acknowledged, the inability of the convening authority to impose reasonable conditions, such as restriction, will have a "chilling effect" upon the willingness of commanders to grant deferment of confinement.

■ The sole limitation imposed by the Manual in paragraph 88f is that the restriction not be intended as punishment; and only if it were unmistakably demonstrated

that such an intent existed would any credit on the sentence be required for a period of release under restrictions. In our view, the principal remedy for an accused who is dissatisfied with the conditions under which his confinement is deferred is to request that he be reconfined and so to continue without further interruption the service of his sentence to confinement.[3]

### III

■ Several weeks have passed since the respondent convening authority acted on petitioner's request for deferment of confinement. At this point it seems appropriate to deny the petition for extraordinary relief without prejudice to the petitioner's right to submit another application for deferment. If such an application is submitted, it can then be evaluated by the convening authority in light of the principles announced by the Court and of any additional information brought to his attention. Accordingly, the petition for extraordinary relief is denied.

Judge FLETCHER concurs.

COOK, Judge (dissenting):

I adhere to my view that the "sole discretion" vested in a convening authority in respect to an application for deferment of confinement of an adjudged sentence is not judicially reviewable for abuse. I would, therefore, dismiss the application for relief by this Court. *See* my separate opinion in *United States v. Brownd*, 6 M.J. 338, 341 (C.M.A.1979). In any event, I do not find any abuse of discretion in the denial of the request for deferment, irrespective of whether the staff judge advocate's advice as to the legality of barring accused from the Enlisted Men's Club for the duration of the deferment was correct or not. Consequently, I would deny the petition for extraordinary relief.

---

2. In *United States v. Heard*, 3 M.J. 14, 20 (C.M. A.1977) (footnote omitted), this Court ruled that in the military the lawful bases for pretrial confinement are the need to assure presence of the accused at trial and "the importance of avoiding foreseeable future serious misconduct of the accused, including any efforts at obstructing justice, if he is set free pending his trial."

3. In an application for deferment of confinement defense counsel may wish to propose to the convening authority conditions which may be imposed in connection with deferment of confinement.