Colonel James E. LONGHOFER,
562–48–9968, United States
Army, Petitioner,

v.

Major General Donald C. HILBERT,
Convening Authority, U.S. Army, and
the United States of America, Respondents.

Misc. No. 8600502.

U.S. Army Court of Military Review.

25 Nov. 1986.

For petitioner: Edward B. MacMahon, Esquire (argued); Major Marion E. Winter, JAGC, Captain William J. Kilgallin, JAGC, Thomas M. Buchanan, Esquire (on brief).

For respondents: Captain Denise K. Vowell, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Mark E. Frye, JAGC (on brief).

Before WILLIAMS, CARMICHAEL, and RICHARDSON, Appellate Military Judges.

## OPINION OF THE COURT AND ACTION ON PETITION FOR EXTRAORDINARY RELIEF

PER CURIAM:

Petitioner was convicted by a general court-martial composed of officer members of disobeying an order, dereliction of duty, and conduct unbecoming an officer. He was sentenced to confinement for two years, forfeiture of $1,000.00 pay per month for two years, and to be reprimanded. He requests extraordinary review of the convening authority's decision not to grant his request for deferment of his sentence to confinement pending appeal of his conviction.

Two days after petitioner's conviction, the convening authority deferred service of the confinement: first, until 27 April 1986 and, then, until a later date to be determined by when he took action on petitioner's case. On 23 September 1986, the new convening authority[1] approved and ordered executed only so much of the sentence as provided for confinement for two years and forfeiture of $1,000.00 pay per month for two years, but suspended execution for six months, with provision for automatic remission, that part of the sentence in excess of confinement for one year and forfeiture of $1,000.00 pay per month for twelve months. The convening authority's action stated that deferment was "rescinded" but did not include the bases for denial of petitioner's request for further deferment. Furthermore, the reasons for denial were not set forth elsewhere in the trial record.[2]

On 25 September 1986, petitioner filed with this court a petition for extraordinary relief and, in the alternative, for a writ of habeas corpus.[3] Because that petition was not accompanied by a supporting brief, we ordered petitioner to comply with Rule 20 of our Rules of Practice and Procedure and suggested petitioner address three issues. Proper pleadings subsequently having been filed, we then ordered the government, as respondent, to show cause why relief should not be granted. The government responded, and both parties have moved for admission of various appellate exhibits which will be discussed *infra*.

### I. Propriety of Extraordinary Relief

#### a. In Aid of Jurisdiction

■ Our power to issue writs devolves from the All Writs Act, 28 U.S.C. § 1651. *Dettinger v. United States*, 7 M.J. 216, 219 (C.M.A.1979); *McDaniel v. Stewart*, 7 M.J. 929 (A.C.M.R.1979). That statute provides courts may issue all writs "necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. Because we must review this case on its merits, *see* Uniform Code of Military Justice [hereinafter cited as UCMJ] art. 66(b)(1), 10 U.S.C. § 866(b)(1), this extraordinary writ is *in aid of* our jurisdiction. *Cf. La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (because Court of Appeals could at some stage review, it had power to issue mandamus).

In this regard, however, respondents argue that because we will review this case in the normal course of appeal, we should not exercise our extraordinary review powers. While our extraordinary review powers are not without limitations, it is clear that if the normal process of appeal is inadequate, issuance of a writ may be both necessary and appropriate. *See Pearson v. Cox*, 10 M.J. 317, 319 (C.M.A.1981); *Corley v. Thurman*, 3 M.J. 192, 193 (C.M.A.1977)

---

1. The original convening authority had been succeeded in command.

2. We recognize, of course, that a convening authority in his *initial action* is not required to state the basis for his denial of a deferment request. However, contemporaneous with his denial, the convening authority is required to state his reasons in writing and provide a copy to the accused. *See* Manual for Courts-Martial, United States, 1984 [hereinafter cited as M.C.M., 1984], Rule for Courts-Martial [hereinafter cited as R.C.M.] 1101(c)(3); *Beck v. Kuyk*, 9 M.J. 714, 716 (A.F.C.M.R.1980). Both the request and the convening authority's action on the request must be attached to the record of trial. R.C.M. 1103(b)(3)(D). *But cf.* R.C.M. 1101(c)(7) pertaining to rescission of deferment.

3. A motion for expedited review was filed at the same time.

(Perry, J., dissenting); *Moore's Federal Practice* ¶ 110.26 at 285 (2d ed. 1985). Further, if the opportunity to resolve recurrent issues that have been thoroughly briefed and argued has arisen, then exercise of extraordinary writ jurisdiction is appropriate. *Shepardson v. Roberts,* 14 M.J. 354, 357 (C.M.A.1983).

There is additional rationale why extraordinary relief jurisdiction could be exercised in this case. The crux of this rationale focuses on Article 57, UCMJ, 10 U.S.C. § 857, the statute on which the right to deferment is based.

b. No Other Means of Timely Relief

Article 57(d), UCMJ, provides that a convening authority may defer service of a sentence to confinement. The purpose of this provision is to provide a procedure similar to release on bail pending appeal in civilian courts. Senate Rep. No. 1601, 90th Cong., 2nd Sess. 3 (1968), U.S.Code Cong. & Admin.News 1968, p. 4501, *reprinted in Index and Legislative History: Uniform Code of Military Justice 1968* at 39 [hereinafter cited as *Index*].

Congress' concern was that, by the time a case reached the Court of Military Appeals and, assuming the existence of plain error, was reversed by that court, an appellant would have served most, if not all, of his sentence to confinement. *Index* at 49. Having already served confinement, an appellant would be without meaningful relief, a result clearly not intended by Congress. If the relief being sought is not available with reasonable promptness and certainty through the normal machinery of the military judicial process—that is, direct appeal—then extraordinary measures are necessary. *See Parisi v. Davidson,* 405 U.S. 34, 41–42, 92 S.Ct. 815, 819–20, 31 L.Ed.2d 17 (1972). Otherwise, when an accused is convicted by court-martial and sentenced to limited confinement, a convening authority could summarily and arbitrarily deny an application for deferment knowing that the

confinement will have been served by the time his action is reviewed on direct appeal. As Chief Justice Marshall stated, "for if the means be not in existence, the privilege itself would be lost...." *Ex Parte Bollman,* 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807). Here, if our extraordinary powers under supervisory mandamus are not exerted, the rationale for deferment, as reflected by congressional concerns, will be defeated.

II. Extraordinary Review of Deferment Decisions

▮ Having established our power *to* act in this case, we must decide whether we *shall* exercise that power. Article 57(d), UCMJ, states the decision to defer rests within the "sole" discretion of the convening authority. This standard, which at first glance seems plenary, was addressed by the Court of Military Appeals in *United States v. Brownd,* 6 M.J. 338 (C.M.A.1979). In that case, the convening authority denied Brownd's request for deferment of confinement pending appeal. Although Brownd had set out reasons why deferment should be granted, the convening authority summarily denied the request without stating reasons why deferment was not in the best interests of the armed force concerned. *Id.* at 339. The court held the phrase "sole discretion" did not mean a convening authority's deferment decision was absolute and unreviewable. *Id.* Instead, the court interpreted the provision to permit review of the convening authority's action to determine if that action constituted an abuse of discretion. *Id.* Because the convening authority had set out no reasons for his decision, abuse of discretion was found. *Id.* at 340. The court then found the request should have been granted.[4] *Id.* The court later affirmed its analysis that a deferment decision is subject to review for abuse of discretion. *Pearson v. Cox,* 10 M.J. 317 (C.M.A.1981). Notably, in *Pearson* the court cited

**4.** Because all confinement had been served, however, the issue of deferment was moot. The fact that the issue was mooted bolsters our position that, if left for ordinary review, a reme-

dy will rarely be available. It was this very concern which led Congress to express the need for enactment of Article 57, UCMJ. *Index* at 49.

*Brownd* for the proposition that an abuse of discretion occurs when a discretionary decision is "suffused with legal error." *Pearson,* 10 M.J. at 319.

It also should be noted the M.C.M., 1984, provides guidance as to the deferment issue. Particularly, R.C.M. 1101(c)(3) states the deferment decision may be reviewed under an abuse of discretion standard. The Drafter's Analysis to the rule indicates the review process is based on *Brownd.* M.C.M., 1984, Analysis of Rule for Courts-Martial 1101, App. 21, A21–69 [hereinafter cited as Analysis]. Although the rule does not expressly require the convening authority to specify his reasons for denying deferment, the *Brownd* court's concerns are still present. Moreover, the Analysis states, in part, that "[b]ecause the decision to deny a request for deferment is subject to judicial review, *the basis for denial* should be included in the record" (emphasis added). Analysis at A21–69.[5] If rationale is not set out, particularly in the face of specific requests by an accused, a reviewing court cannot know whether discretion was abused. Subsequent review, therefore, would be rendered meaningless.

The respondents assert that, because of recent legislation, the *Brownd* decision commands little precedential value. Respondents argue the extensive revisions of Articles 60 and 71, UCMJ, 10 U.S.C. §§ 860, 871, contained in the Military Justice Act of 1983, evidence congressional intent to strengthen the convening authority's command prerogative. With regard to those particular articles of the UCMJ, we agree with respondents' reading of the Act's legislative history. Further, we agree the convening authority plays a critical role in the administration of military justice—an importance military appellate courts have long recognized and upheld. *See United States v. Kugima,* 36 C.M.R. 339, 341 (C.M.A.1966); *United States v. Nix,* 36 C.M.R. 76, 78–79 (C.M.A.1965). Respondents assert, by analogy, that Con-

gress, through its expressed intent as to other articles of the code, likewise intended to make plenary the discretion described in Article 57, UCMJ.

In their argument, however, respondents have disregarded an important principle of statutory construction. When Congress makes a comprehensive reexamination of a statutory scheme which has been interpreted by the courts, and takes no action as to that interpretation, such inaction is itself evidence that Congress affirmatively intended to preserve the court's interpretation. *Cf. Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 381–82, 102 S.Ct. 1825, 1840–41, 72 L.Ed.2d 182 (1982) (although not present in statute, an implied cause of action created by the courts and not addressed in comprehensive reexamination of the statute evidenced that Congress intended to preserve the remedy). Here, the 1983 Act had no effect on Article 57(d), UCMJ. It neither changed the standard nor disavowed *Brownd.*

Moreover, when those agencies charged with implementing a statute construe a statute a particular way, such construction is entitled deference. *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). Here, the President, by operation of Article 36, UCMJ, 10 U.S.C. § 836, is charged with implementing the requirements of Article 57, UCMJ. Because R.C.M. 1101(c)(3) and the Analysis thereto indicate deferment discretion is subject to review, Analysis at A21–69, the decision of the implementing agency, in this instance the Chief Executive[6], buttresses the position we now take. To disregard *Brownd* and the MCM, 1984, as respondents suggest, would be to disregard Congress, the President, and our higher court. This we shall not do.

### III. Appellate Exhibits

■ At this juncture, we should note the respondents have filed with this court an affidavit of the convening authority which states his reasons for denying deferment.

---

**5.** See n. 2, *supra.*

**6.** Under the provisions of Article 36, UCMJ, the President may be likened to an implementing agency.

This affidavit was not executed contemporaneously with his action but was executed on 14 October 1986, approximately nineteen days after the date petitioner filed this petition.

Recently, this court has expressed its intention to curtail sharply appellate litigation through the use of affidavits. *See United States v. Williams*, 22 M.J. 584 (A.C.M.R.1986). This practice slows the review process and permits *post hoc* rationalization to occur when reason or rationale should have accompanied the decision in question at the time that decision was made. The Court of Military Appeals in *United States v. Hurd*, 7 M.J. 18 (C.M.A. 1979), addressed this very concern. There, the convening authority who acted to vacate a suspension of Hurd's punitive discharge failed to document his reasons and the evidence relied upon for his action. *Id.* at 19. On appeal, the government sought to cure that error by filing with the court an affidavit from the convening authority which set forth the rationale and bases for his action. In response, the court stated: "[W]e decline to entertain such *post facto* documents purporting to explain what ought to have been explained at the time of the action...." *Hurd*, 7 M.J. at 19 (footnote omitted) (emphasis in original). That response is, based on the requirements of *Brownd*, equally applicable here.[7, 8] *But cf. McKinney v. Pauly*, 9 M.J. 581, 583 (A.F.C.M.R.1980).

## IV. Deferment Analysis

We find, therefore, the convening authority abused his discretion. Thus, we, as did the Court of Military Appeals in *Brownd*, must independently review the facts of this case and determine whether deferment is appropriate.

The M.C.M., 1984, sets out factors which may be considered in determining whether deferment is appropriate. R.C.M. 1101(c)(3). Analysis of those factors here convinces us petitioner's confinement should be deferred. Petitioner has had a long career distinguished by assignment to important positions of leadership and command. He has been decorated numerous times for bravery in combat. At trial, very favorable evidence[9] was introduced concerning petitioner's service to the Army— evidence which no doubt persuaded the members not to adjudge a dismissal. This fact, that petitioner will eventually return to duty, weighs heavily in favor of deferment. The likelihood that petitioner would jeopardize his substantial accrued retirement benefits by violating deferment seems nonexistent. Further, for many of these same reasons, it is our opinion that petitioner does not present a flight risk. The fact that petitioner's sentence to confinement was deferred for many months without incident following his conviction, together with his seemingly stable family situation, also strongly support the propriety of continued deferment of confinement pending appeal.

Respondents argue, though, that because petitioner was convicted of conduct unbecoming an officer by impeding an investigation of Lieutenant Colonel (LTC) Duncan, there is a possibility petitioner will attempt to contact LTC Duncan.[10] We note, however, petitioner was not charged with obstructing justice. *See* M.C.M., 1984, Part IV, para. 96. Further, had petitioner been interested in contacting LTC Duncan, there was ample opportunity for him to do so in the months following his conviction while he was out of confinement. Respondents have made no allegation of such attempted wrongdoing.

7. However, even if we considered the convening authority's reasons as set forth in his *post facto* affidavit, our analysis of R.C.M. 1101 and the facts of this case convince us deferment is still proper.

8. After oral argument, petitioner also filed statements allegedly made by a government representative to civilian defense counsel. We apply the same standard of admissibility to those documents and refuse to admit them.

9. The government presented no evidence in aggravation.

10. LTC Duncan recently was tried, convicted, and sentenced by court-martial. His adjudged sentence included confinement for ten years.

In the final balancing, we believe factors favoring deferment outweigh those favoring immediate confinement. We make this decision after careful consideration of congressional concerns and in light of the particular facts of this case. We stress that each deferment request must be considered with regard to the relevant facts of the case. Generalizations must be avoided.

### V. Conclusion

In summary, we believe the convening authority abused his discretion not only in failing to specify timely why confinement was not deferred, but, more importantly, in failing to grant petitioner's request for deferment pending appeal. *See Brownd*, 6 M.J. at 340. Our own determination that deferment is proper under the specific facts of this case is made with particular attention having been given the legislative history of Article 57(d), UCMJ, and the standards specified by the President in implementing Congress' concerns. In finding

that deferment of confinement pending appeal is proper here, we are confident that congressional concerns have been satisfied and that the interests of justice have been served.

Accordingly, the petition for extraordinary relief is granted. The record of trial will be returned to The Judge Advocate General for return to the convening authority who exercises general court-martial jurisdiction over the command to which petitioner is now assigned. That convening authority is ordered to defer petitioner's service of his sentence to confinement pending completion of the appellate process.[11]

---

**11.** It is this convening authority who currently has deferment authority over petitioner as defined in R.C.M. 1101. Moreover, in the future, should the general court-martial convening authority of a command to which petitioner is assigned decide to rescind this deferment, he is not precluded from doing so because of this court's exercise of jurisdiction over petitioner's extraordinary writ request. Any rescission action, should one become necessary, remains governed by R.C.M. 1101(c)(7).